R. S. GENTRY, Respondent, *v.* CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Appellant.

### February 12, 1884.

1. AGENCY. — The authority of an agent is to be determined by the nature of his business, and is co-extensive with the requirements of such business.

2. —— INSURANCE. — Authority to solicit, receive, and forward applications for insurance and to receive the first premium, gives the agent authority to bind the company by his receipt for such first premium.

3. —— BROKERS. — A mere insurance broker, as such, has no right to receive a premium from an applicant for insurance.

4. —— ESTOPPEL. — That the company has failed to furnish its solicitor with the certificate of renewed authority required by statute will not warrant it in repudiating such solicitor's acts.

5. —— PRESUMPTIONS. — One dealing with an insurance agent has a right to presume that the company has complied with the insurance law.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed*.

DYER, LEE & ELLIS, for the appellant: An agent is the employe of the company; a broker is the agent of the one soliciting insurance. — *Butler* v. *Dorman*, 68 Mo. 298. In cases where the writing only professes to be, or in its nature is only a part of the entire transaction resulting in agency, then the writing does not bar proof of the other parts by parol. — Story's Ag. (9th ed.), sects. 79, 80. The question of agency in this case was for the jury. — *London Society* v. *Bank*, 36 Pa. St. 498; *Hawkinson* v. *Lombard*,

25 Ill. 572 ; *Bank* v. *Plannett*, 37 Ala. 222, 227 ; *McClung* v. *Spotswood*, 19 Ala. 165 ; *McDonnell* v. *Bank*, 20 Ala. 313.

W. L. SCOTT, for the respondent : The company can not get money through its agents and refuse to account for it because it has failed to take the precaution prescribed by law respecting its agents. — See *Swan, Assignee*, v. *Waterton Fire Ins. Co.*, 96 Pa. St. 37 ; May on Insurance (2d ed.), sect. 577, and authorities cited. The question of whether Ryan's act was the act of the company is one of law. — *Grover* v. *Railroad*, 70 Mo. 679.

BAKEWELL, J., delivered the opinion of the court.

This is an action to recover from defendant $364, which it is alleged was paid to defendant by plaintiff, on making application for life insurance, upon the agreement that, if the application should be rejected, defendant would return the money. It is alleged that the application was rejected, and the money not returned. The answer was a general denial. There was a verdict and judgment for plaintiff.

There was testimony tending to show the following state of facts : Defendant is a foreign corporation engaged in the business of life insurance. It has an office in St. Louis, and A. B. Denton was its chief agent for Missouri. Harvier & Ryan, on April 13, 1881, were carrying on business together in St. Louis, holding themselves out as general agents and insurance brokers. At that date Denton addressed to them the following letter : —

" ST. LOUIS, April 13, 1881.

"*Messrs. Harvier & Ryan, Insurance Brokers, St. Louis, Mo.:*

" GENTLEMEN — Your proposition to furnish life business to the Connecticut Mutual has been favorably considered. Until otherwise notified by me, I will allow you upon the

full premiums of all our policies, placed by you, except single payment policies, a flat brokerage (*i.e.*, a commission upon the first premium only), of forty per cent.

"Yours respectfully,

"A. B. DENTON,

"*General Agent.*"

An experienced life insurance agent testified on behalf of plaintiff, that the term "placing policies of insurance" is one of general use in insurance companies, and which has a technical meaning; that it means, soliciting the application, forwarding it to the general agent or the company, and the consummation of the transaction; that the insurance is not regarded as "placed," until the premium is paid; and that "furnishing life insurance" is a technical phrase, meaning, in the insurance business, the same as "placing" it.

The defendant had a printed private manual of instructions and rates to agents, which, amongst other things, has the following:

"If the applicant desires to make a payment on account of premium at the time of making the application, the agent may give therefor a receipt in the following form, and no other, and a duplicate thereof must accompany the application:

"'Received the sum of ———— dollars on account of premium on an insurance of ———— dollars, on the life of ————, of ———— county of ———— and State of ————, for which an application dated ———— has been made to the Connecticut Life Insurance Company of Hartford. Said insurance to take effect from the date hereof, provided the application therefor be approved and accepted by said company. The policy, if issued, to be delivered by me, when received, to the applicant on the return of this receipt to me. It is expressly understood and agreed that, if the application for the above insurance be declined by said company, it shall be held that no insurance has ever been created under this receipt,

and the amount paid hereon shall be repaid to the applicant on the return of this receipt to me.

"  ' Dated at ———— , this ————, 187.

"  ' ————Agent at————. '

" By securing payment of premiums when the application is made, the agent avoids the contingency of being unable afterwards to deliver the policy and will often save much time and labor for himself, and save the company from expense."

With the contract with the defendant and a copy of this book of instructions in his possession, J. Volney Ryan, of Harvier & Ryan, went to Sedalia, Missouri, where he had some acquaintance already, and introduced himself as the agent of defendant. At the solicitation of Ryan, plaintiff applied for a policy in defendant's company, and paid the premium of $364.00 to him. Plaintiff and other persons were examined by a physician at Sedalia. Plaintiff, at the time of paying the premium, received from Ryan a receipt in the form set out above, signed " Harvier & Ryan, agents at St. Louis, Mo." On the 9th of May, 1881, Denton, the general agent, received the following communication from Harvier & Ryan : —

" We hand you herewith applications : John H. Bothwell, $3,000 ; Joseph D. Sicher, $2,500 ; John H. Mentz, $2,500 ; R. T. Gentry, $500 ; Frank E. Sicher, $3,000 ; N. Lee Porter, $3,000 ; Jas. C. Thompson, $2,500 ; Cyrus Newkirk, $2,500 ; total, $24,000. Premiums on same will be paid at this office on delivery of policies to us.

" Yours very truly,

" Harvier & Ryan."

The men named in this letter were all examined at Sedalia by a physician for Ryan. Some of the certificates were delivered by the physician to Ryan ; others, the physician forwarded, by Ryan's direction, to Denton at St. Louis. These had been returned to him by

Denton for correction, with directions to return them to Denton at St. Louis. On May 14, 1881, defendant received a letter from Denton, dated the previous day, as follows : —

" Mr. J. V. Ryan, of Harvier & Ryan, insurance brokers, has submitted your application for insurance in the Connecticut Mutual, together with others from citizens in Sedalia, all of which will be forwarded to the company and passed upon in due course. We are highly gratified to receive it, and trust that your connection with this old and sterling company will be most satisfactory. But reports have come to us which we hope are not true, that these applications were obtained by Mr. Ryan organizing a so-called board of directors of the Connecticut Mutual, and by pledging that the company's funds should be loaned in Sedalia through the agency of this board, etc., etc. Mr. Ryan has no authority whatever for making any such pledges, or holding out any such inducements to get business, and I sincerely trust we have been entirely misinformed in regard to it. But I have deemed my information of sufficient importance to warrant my writing to you about it confidentially ; for, although we are always glad to get good business, we had rather have none than business obtained in the wrong way. I would be glad to hear from you about this matter by return mail, and will hold anything you may say as strictly confidential."

Four days afterwards, Mr. Denton wrote to plaintiff that the application for insurance handed to Denton by Ryan is in Denton's hands awaiting plaintiff's orders ; and that Denton had notified Harvier & Ryan that no policy would be issued upon it. This letter refers plaintiff to another letter of same date written by Denton to another applicant for insurance in Sedalia, in which Denton states that Ryan never was an agent of defendant ; that he was a mere broker, obtaining insurance from different companies ; and that the writer first knew that Ryan was operating at

Sedalia on the 10th of May, when he brought eight applications, which the writer told Ryan he would consider, as he would say to any person offering risks, against whom he knew nothing.

A great deal of testimony was brought out by defendant, on the cross-examination of plaintiff's witnesses, and against the objection of plaintiff, tending to show that Ryan was a swindler, who procured insurance and collected premiums in Sedalia, on the fraudulent representation that his firm had replaced the old agent in St. Louis, and by setting on foot a plan to organize a board for the purpose of investing, in Sedalia, the surplus funds of defendant, claiming that he had full powers to act in this matter for the company. According to Ryan's plan, all the members of such a board of ten were to be policy holders of the company; the attorneys were to be paid, and the others were to benefit incidentally. Plaintiff was talked of as a secretary of the board. He swears, however, that he would have insured on the application of Ryan, independently of any view of qualifying himself for membership of the projected board. Defendant offered to show that the copies of blank receipts which Ryan had in Sedalia, as well as certain blanks for forms of use in carrying out Ryan's project of a board for local investment of the funds of the Connecticut Mutual in Sedalia, were printed by Ryan's order at Sedalia. But the court excluded the evidence.

The court gave the following instruction at the instance of plaintiff: —

" The court instructs you that if subsequently to the date of the written communication from A. B. Denton to Harvier & Ryan, the same set forth in the stipulation read in evidence, that said Harvier & Ryan or said Ryan went to Sedalia, Missouri, and obtained from plaintiff his written application for a policy of insurance in the defendant company, and delivered the said written application into the hands of said Denton, and that said Denton thereafter

addressed a letter to plaintiff in which he states that said application had been received by him from said Harvier & Ryan, or said Ryan, and that the same would be forwarded to the company for action thereon, then the said Harvier & Ryan would be the agents of the company for the purpose of taking the said written application from the plaintiff; and if it appears from the evidence that in connection with the taking of said application, and that on or about the time the same was taken, the said Harvier & Ryan, or the said Ryan, accepted from the plaintiff a sum of money as the first premium on said contemplated insurance, and gave him a receipt therefor in the name of the defendant, stipulating that if the insurance risk was not accepted by defendant, and the policy not issued, the said money was to be returned upon demand, and upon surrender of the receipt, then the act of Harvier & Ryan, or of said Ryan, in so accepting the money and giving the receipt, would be the act of the company, the defendant herein; and if you find that no policy was ever issued to the plaintiff by said company on said application, then the plaintiff is entitled to recover in this action the amount of money so received by said Ryan as such first premium.''

The following instructions asked by defendant were refused : —

1. '' The court instructs the jury, that if they shall find and believe from the evidence that the plaintiff in this suit was induced in whole or in part to make his application for insurance in the defendant's company, by the representation of Mr. Ryan, that he was authorized to organize a ' local board,' for loaning the money of the defendant company, of which board plaintiff was to be a member, then the jury will find for the defendant.

2. '' The court instructs the jury, that before Mr. J. Volney Ryan could become an agent of defendant company, so as to authorize him to bind the defendant by receiving the premium sued for in this case, from the plaintiff, it was

necessary that the said Ryan should have authority from the insurance department of the state of Missouri, authorizing him to act as such agent.

3. "The court instructs the jury, that, there being no proof that the defendant company or Mr. Denton, its agent, knew the plaintiff had paid the premium to J. Volney Ryan, in the absence of such proof, the rights of the plaintiff are measured by the actual contract between Ryan and the defendant company, which provided that Ryan should not have the right in behalf of the company to receive and receipt for the premium.

4. "The court instructs the jury that the right of J. Volney Ryan to receive premiums can not be inferred from the authority to take applications for insurance ; and there being no proof that said Ryan had authority from the defendant to receive premiums, therefore, Ryan had no such authority as the agent of the company.

5. "The court instructs the jury that under the contract between Harvier & Ryan and the defendant corporation, J. Volney Ryan had no authority to bind the defendant by receiving the premium from the applicant for insurance, and, therefore, the payment of premium by plaintiff to said Ryan was not a payment which made the company liable for the re-payment thereof."

The authority of an agent is to be determined by the nature of his business, and, on the face of the matter, is coextensive with its requirements. A mere broker, who had no other agreement with an insurance company than this, that he should receive a certain percentage on premiums paid at the office of the company, or to the agents of the company authorized to receive them, in all cases in which the person paying the insurance premium was induced by his solicitations to insure in the company, might not be an agent of the company to receive any premium. But, in this case, the written agreement of the company with Ryan shows that Ryan was more than a mere broker, such as we

have described.  His proposition in writing was to "furnish life business " to defendant, on certain terms.  And, in answer to this proposition, he received a written authorization from the general agent of the company to "place insurance."  Clothed with this authority, he received applications for insurance in a distant city, named a physician to examine the applicants, sent these applications, with the certificate of physician, to the general agent of defendant in St. Louis, received the first premium, and notified the general agent of the insurance which he had thus placed, and that the premiums would be paid at his (Ryan's) office, on the delivery of the policies to the firm of which he was a member.  The general agent, far.from repudiating the acts of Ryan when they came to his knowledge, sends back for correction some certificates of the examining physician, and five days after receiving Ryan's communication enclosing the applications, writes to one of these applicants that the company is highly gratified to receive the applications, and will pass upon them in due course.  On the undisputed facts of the case, Ryan was an agent of the company in the matter of soliciting these risks and receiving and forwarding these applications.  Such an agent is usually furnished with proper blanks.  It is immaterial whether Ryan got his blanks from the company or had hem printed himself.  The company knew that Ryan had blanks, on the 9th of May, when they received the applications, and so far ratified his acts in taking them.  That the authority to solicit insurance in other cities and receive applications to be forwarded to the general agent involved that of receiving the first premium is' clear, because defendant, in- its general instructions to agents, not only authorizes, but urges, the sub-agent who take an application for insurance to be forwarded to the company for acceptance or rejection, to secure payment of the premium when the application is made.

We see nothing in the instruction given for plaintiff of which defendant can complain.

The first instruction asked by defendant was properly refused. It matters not what influence may have led plaintiff to apply for insurance in defendant's company. If defendant appointed Ryan to solicit insurance and receive applications for insurance in Sedalia, Ryan was also its agent to receive the payment which the company authorized such agents to receive on taking the application; and whether defendant's general agent in St. Louis understood well what he was doing, and actually intended to appoint Ryan as its agent in Sedalia or not, if he gave him a writing from which such appointment might fairly be inferred, and ratified his acts done within the scope of such agency, then, for the purposes of this case, the premium received by Ryan was received by the company, and the contract made by Ryan that the premium should be returned if the application was not accepted, was binding upon the company, no matter what views of other or further benefit to himself the applicant might have had in applying for insurance.

The second instruction was properly refused, because one dealing with the agent of an insurance company has a right to presume that the company has complied with the insurance law, which does not provide that a certificate from the insurance department is necessary to create the relation of agent to an insurance company, or that there can be no such agency without such certificate. Rev. Stats., sect. 6011. Defendant should take all the precautions, and obey all the provisions of the law, in appointing its agents, but, if it neglects these statutory provisions, it can not hold to money received from its agents on the ground that it has neglected to obey the law which requires that it procure annually and furnish to all its solicitors, copies of its renewed certificates of authority.

The third instruction assumes that the actual contract between defendant and Ryan was, that Ryan should have

no authority to receive and receipt for premiums.   In view of the written agreement, the court properly refused so to tell the jury.   Besides, it was immaterial that defendant knew that Ryan had received the premium, if it knew that he had solicited and received applications on behalf of the company for insurance in Sedalia and had forwarded them with the physician's certificate, and, so knowing, ratified these acts, which were wholly inconsistent with the position that Ryan was a mere broker not authorized to receive and forward applications.

As to the fourth instruction, we think, that in view of the instruction of the company to its agents, as to which there was no dispute, the right to receive premiums might be inferred from the right to receive applications in a distant city and forward them to the general agent in St. Louis.   The fifth instruction was properly refused, for the reason already stated.

In affirming this judgment, we lay down no general rule that an authority to receive and forward applications for insurance carries with it the authority to receive the payment of the first premium, to be returned if the application is rejected.   The tendency of modern decisions is to extend the power of insurance agents as to all they may do touching the contract, on the ground that public policy and the safety of the people require that the insurance company should be liable for such acts as appear on their face to be usual and proper in and about the business in which the agent is engaged.   *Ætna Co.* v. *Maguire*, 51 Ill. 342 ; *Ins. Co.* v. *Wilkerson*, 13 Wall. 222.   And a larger power must necessarily be permitted to an agent in a distant place, who might lose insurance if he had to pause at every step, than might be essential to the efficiency of an agent residing near the home office.   It is unnecessary, however, to pass upon any such question, because it is not properly in this case.   The undisputed evidence is, that the agents of defendant had instructions, printed in their manual of

instructions to agents, to collect the first premium on receiving the applications to be forwarded for approval. Nothing is said as to this in the instruction given for plaintiff, and perhaps the instruction is technically erroneous in assuming the fact of such instructions. But as the evidence that such were defendant's instructions to its agents is clear and uncontroverted, we have not thought this defect in the instruction any ground for reversing the judgment. *Caldwell* v. *Stephens*, 57 Mo. 569.

We see nothing in *Butler* v. *Dovman* (68 Mo. 298), cited by appellant, which conflicts with the views which we have expressed. That case holds that a mere broker of goods, not intrusted by the owner with the property itself, has not the *indicia* of authority to receive payment on taking an order for goods. A mere insurance broker, as such, would have no authority to receive a premium, but that is not the case before us.

Appellant's counsel insist upon the non-appearance of any evidence that Gentry saw the written appointment of Ryan as agent, or the instructions of the company to its agents. That seems to be quite immaterial. Gentry paid money to Ryan as agent of defendant, which, if Ryan had a right to receive it, Gentry has a right, by the terms of its payment, to recover back from defendant. If Ryan was not the agent of defendant, or if he exceeded his powers in receiving this money, then, in the absence of ratification or estoppel, Gentry must take the consequence of his imprudence, and can not hold the company. But, if Ryan was the agent of defendant, acting within the scope of his powers in receiving this money, or if, with the knowledge of the facts, defendant ratified the dealings of Ryan with plaintiff whereby he held himself out to be the agent of defendant for the purpose of receiving applications for insurance outside of St. Louis, and forwarding them, then Ryan was the agent of defendant for the purposes of this case, and it is quite immaterial whether plaintiff came to the

conclusion that Ryan was such agent and clothed with such powers, on sufficient or insufficient grounds. It may be that plaintiff ran a risk, and acted upon the representations of the agent without asking to see his credentials ; but the only matter that concerns plaintiff or defendant in regard to this transaction at present, is, not whether Gentry acted with the utmost prudence in believing the statements of defendant's agent as to the scope of his powers, but whether those statements, at the time they were made, were true. If those statements, when Gentry paid the money, were true so far as this, that Ryan was authorized by defendant to receive and forward applications made in Sedalia for insurance in defendant's company, and was as such agent authorized to receive the premiums payable on making the application, it matters not that Ryan may have been unworthy of belief, or that Gentry may have believed other statements of Ryan about his agency which were absolutely false.

We think the judgment should be affirmed. It is so ordered. Judge LEWIS concurs. Judge THOMPSON did not sit.