DANIEL M. BOWEN *et al.*, Respondents, v. THE
HANOVER FIRE INSURANCE COM-
PANY, Appellant.

St. Louis Court of Appeals, February 23, 1897.

Insurance, Fire: FORFEITURE: WAIVER: EVIDENCE. In a suit on a fire policy, where defendant claimed that plaintiffs had forfeited all rights under the policy by reason of their failure to take an inventory of stock and to keep such books of account as required by the policy, and plaintiffs claimed that, under the evidence, defendant had waived its right to insist on a forfeiture, and the evidence tended to show that the adjusters, after they were advised of the forfeiture, proceeded to examine plaintiffs' books with the assistance of one of the plaintiffs, who acted at their request, and, when by their joint efforts, the amount of the loss was ascertained, and before any denial of liability under the policy, insisted on a compromise of the claim,— *Held:* That the evidence justified the submission to the jury of the question of waiver, under the rule adopted in *McCollum v. Ins. Co.*, 61 Mo. App. 352, and adhered to in *Fink v. Ins. Co.*, not yet reported.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED; Judge BLAND concurring, Judge BOND dissenting.

*Fyke, Yates & Fyke* for appellant.

Assured neither took an inventory nor kept books of account correctly detailing sales of the stock "hereby covered," i. e., by the policy sued on. The keeping of such books was a promissory warranty running with the policy, and whether material or immaterial, without its fulfillment the policy was void. *Laudman v. Ins. Co.*, 18 Ins. L. J. (La.) 813; *Kelly Goodfellow Co. v. Ins. Co.*, 28 S. W. Rep. (Tex.) 1027; *Insurance Co. v. Center*, 33 *Id.* 554; *Goldman v. Ins. Co.*, La., Feb., 1896, not yet reported; *Pelican Co. v. Wilkerson*, 13 S. W. Rep. (Ark.) 1103; *Insurance Co. v. Parker*, 32 *Id.* 507; *Crigler v. Ins. Co.*, 49 Mo. App. 11.

A promissory warranty must be exactly and literally fulfilled. *Brooks v. Ins. Co.*, 11 Mo. App. 349; *Maddox v. Ins. Co.*, 56 *Id.* 343.

Appellants' refused instructions, numbers 3 and 4, correctly state the law of waiver. *Porter v. Ins. Co.*, 62 Mo. App. 520; *Dautel v. Ins. Co.*, Mo. App., not yet reported. See, also, *Boyd v. Ins. Co.*, 16 S. W. Rep. (Tenn.) 470; 2 Bid. on Ins., sec. 1052; *Finderson v. Ins. Co.*, 57 Vt. 520; *Devens v. Ins. Co.*, 83 N. Y. 168.

The facts proven do not show waiver. *McCormick v. Ins. Co.*, 24 Pac. Rep. 1003.

*Fagg, Ball & Hicks* for respondent.

On the question of waiver as to keeping cash book in iron safe, etc., respondents have shown a stronger

case than that of *McCollum v. Ins. Co.*, 61 Mo. App. 352.

That clause in the policy may be waived after the insurance company has learned of the destruction of the books, and without any consideration therefor. *Roberts v. Ins. Co.*, 35 S. W. Rep. 955, and cases cited; *Curnow v. Ins. Co.*, 24 S. E. Rep. 74, and cases cited; 21 *Id.* 1006; 94 Ga. 785.

BRIGGS, J.—This is an action on a policy of fire insurance for $1,000. There is no dispute about the issuance of the policy or the burning of the goods insured, during the life of the policy. The policy permitted other insurance, the total insurance, however, not to exceed in amount three fourths of the cash value of the goods, and the policy also provided that if other insurance was procured and a loss occurred and the total amount of insurance exceeded three fourths of the cash value of the property destroyed, the defendant would only be liable for its *pro rata* proportion of such three fourths value. It was averred in the answer that the total amount of insurance exceeded the three fourths value of the goods destroyed, and that under the foregoing provisions of the policy, the defendant, in no event, could be held for more than one third of such value. This matter seems to have been abandoned in this court, as it is not mentioned in the briefs. The defenses were that the plaintiffs, who are merchants, failed to keep such books of account as the policy required, and further that they violated the "iron safe" clause in the policy. It was stipulated in the policy "that the assured shall take an inventory of the stock hereby covered at least once a year during the life of the policy, and shall keep books of account correctly detailing purchases and sales of said stock, and shall keep said books and inventory securely locked in an

iron safe during the hours that said store is closed for business. Failure to observe these conditions shall work a forfeiture of all claims under this policy." These defenses were put in issue by the reply. Under the instructions of the court the jury returned a verdict for the plaintiffs for the full amount of the policy, and a judgment was rendered thereon. The defendant has appealed.

On the eighth day of December, 1894, plaintiffs took an inventory of their stock. This was within the time prescribed in the policy. They kept a bill book, in which were pasted all of the invoices of goods purchased after the inventory was taken. They also kept a ledger, journal, cash book, and a bank book showing the cash deposits of the firm in bank. We do not understand that the defendant claims that the proper books were not kept, but its complaint is that the plaintiffs so conducted the business as to practically render the books of no value. in adjusting the loss. It seems that the plaintiffs owned a wareroom situated a few feet from the main storeroom. The policy only covered goods in the latter. The wareroom was not burned. At the time of the fire the plaintiffs had a small portion of their stock stored in that room. The plaintiffs failed to note on their books those goods or their value. The objection made by the defendant would be fatal to plaintiffs' case, had they not taken the precaution to make an inventory of the goods that were not burned. With the aid of this inventory the amount of the actual loss could be readily ascertained, which destroys the force of the objection.

The plaintiffs admitted that they failed to put the cash book in the safe and that it was burned. They averred and attempted to prove a waiver of the forfeiture. Touching the question of waiver the evidence of the plaintiffs tended to prove these facts: The fire

occurred on the fifteenth day of March, 1895.  A short
time afterward the defendant's adjuster, who was ac-
companied by the adjuster of the other insurance com-
pany, went to the plaintiffs' place of business for the
purpose of adjusting the loss.   They arrived about 1
o'clock in the afternoon and remained until the next
morning.   Immediately upon their arrival they asked
Bowen, one of the plaintiffs, for the books of the firm.
He brought to the hotel for their inspection the inven-
tory which showed the amount of goods on hand on the
eighth of December, 1894, also their ledger and journal
and bill book, which showed the amount of goods pur-
chased since the inventory was taken, and also the
amount of sales made on credit.   The adjusters called
for the cash book or daily register of cash sales.  Bowen
returned to the store for the book, and for the first time
was informed by his partner that on the night of the
fire he had failed to put the book in the safe, as he was
accustomed to do, and that it was burned.   Thereupon
Bowen returned to the hotel and informed the adjusters
of the destruction of the book and the cause of its de-
struction.   One of the adjusters remarked that it would
probably be a difficult matter to determine the amount
of the cash sales without that book.    Bowen then stated
that he had the bank book of the firm, from which the
amount of cash sales could be approximately deter-
mined, and upon the request of the adjusters he pro-
duced the book.  The adjusters took the books and asked
Bowen to return to the hotel in two or three hours.  He
did so and at the request of the adjusters he assisted in
going through the books.   They took the inventory of
December 8, as a basis for the adjustment.  They worked
on the books until late at night and they agreed that
from December 8, 1894, to March 15, 1895, the date of
the fire, the cash sales amounted to $1,867.54.   The in-
voices showed the value of the goods purchased after the

inventory, and the ledger and journal showed the amount of credit sales. The net loss was ascertained by deducting the amounts of the cash and credit sales from the amount of the inventory and the subsequent purchases, which according to the testimony of Bowen was over $4,800. The next morning the adjusters insisted that the plaintiffs should accept less than the face of the policies. They refused to do so, and the defendant's adjuster delivered to them the following paper:

"ASHLEY, Mo., March 23, 1895.

"*To Bowen and Smith:*

"This is to advise you that my visit here is for the purpose of investigating your loss only, and the Hanover Fire Insurance Company hereby denies any and all liability under its policy number 29, issued at their Louisiana, Missouri, agency by reason of your failure to comply with that condition of your policy, which provides as follows: And shall keep books of account correctly detailing purchases and sales of said stock and shall keep said inventory and books securely locked in an iron safe during the hours that said store is closed for business.

(Signed) "H. C. STEWART, Adj.

"HANOVER FIRE INSURANCE COMPANY."

Under this proof the circuit court submitted the question of waiver to the jury. This is assigned for error.

In the recent case of *McCollum v. Insurance Company*, 61 Mo. App. 352, we decided "that a waiver of forfeiture may be inferred when the insurer after knowledge of the act of forfeiture requires the assured by virtue of the requirements in the policy *to do some act or incur some expense.*" This ruling is based on the idea that the waiver of a forfeiture is a question of *intention*.

FIRE insurance: forfeiture: waiver: evidence.

Counsel for defendant challenges it on the ground that waiver is a question of *estoppel.* In the subsequent case of *Fink v. Lancashire Ins. Co.*, number 6396, not yet reported, the question was again under discussion, and we adhered to our decision in the *McCollum* case. We are supported by the decisions of the courts of many states, notably those of the New York court of appeals. That court in its opinion in the case of *Titus v. Ins. Co.*, 81 N. Y. 410, said: "It may be asserted broadly that if in any negotiations or transactions with the insured *after knowledge of the forfeiture*, it (the company) *recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived,* and it is now settled in this court after some difference of opinion that *such a waiver need not be based upon any new agreement or estoppel.*" This rule is reaffirmed in *Robertson v. Ins. Co.*, 88 N. Y. 541; *Weed v. Ins. Co.*, 116 N. Y. 106; *Roby v. Ins. Co.*, 120 N. Y. 510; *Harrington v. Ins. Co.*, 21 N. Y. Supp. 31; *Donald v. Ins. Co.*, 135 N. Y. 378. Under the rule which we have adopted we think it clear that the evidence in the case at bar justified the submission of the question of waiver to the jury. The evidence tended to show that after the adjusters had been advised of the forfeiture they proceeded with the adjustment, and at their request Bowen assisted in the examination of the books. He and the adjusters spent six or eight hours in the work, and finally by their joint efforts the amount of the loss was ascertained. The contention that the evidence tends to prove *only* an attempt on the part of the adjusters to ascertain the amount of the loss with the view of compromising the claim, is unfounded. Nothing was said about a compromise until after the examination of the books was completed. Their conduct may admit of the inference that such was their

intention, but it also admits of the inference that they did not intend to insist on the forfeiture.

Our conclusion is that the judgment of the circuit court ought to be affirmed. It is so ordered. Judge BLAND concurs; Judge BOND dissents.