JULIA E. DANIEL, RESPONDENT, v. AETNA LIFE INSURANCE CO., APPELLANT.—36 S. W. (2d) 689.

In the Springfield Court of Appeals.   Opinion filed February 23, 1931.

*J. M. Haw, Ray B. Lucas, Jones, Hocker, Sullivan & Angert* and *Raymond J. Lahey,* for appellant.

*M. E. Montgomery* and *Ward & Reeves* for respondent.

BAILEY, J.—Plaintiff brought suit as beneficiary on a life insurance policy dated May 20, 1921, issued by defendant to plaintiff's son, Archie B. Daniel, who died August 31, 1928. The petition is in the usual form, praying to recover the face value of the policy, to-wit: the sum of $2500. The cause originated in Scott county and on change of venue was sent to Mississippi county. Defendant's answer admitted the execution and delivery of the policy and the death of Daniel as alleged but set up as a defense that the policy had lapsed, according to the terms of the policy, for failure to pay a premium in the sum of $61.85, due May 20, 1928, or within thirty-one days thereafter, and alleged there was no liability under the policy at the time of the death of Archie D. Daniel, except for $17.50, the cash surrender value of the policy, after deducting outstanding indebtedness against the same.

Plaintiff's reply was a general denial and a further plea that, "such facts do not constitute any defense to this action, for the reason that after defendant was informed thereof said defendant waived such defense attempted to be set up aforesaid by not acting thereon, and by holding out to this plaintiff that the policy sued upon was good and valid and binding upon defendant, and by requiring plaintiff to expend much time and money making proof of loss and in getting up further data required by defendant, and by remaining silent as to such defense now alleged, and by requiring plaintiff to expend her time and money, as aforesaid, under the belief that the said policy was valid and binding."

Upon the issues thus drawn, trial was had to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2339.88, from which judgment, defendant has appealed.

At the close of all the evidence defendant offered an instruction in the nature of a demurrer thereto, which was by the court refused. Defendant assigns this as error because: "(a) The evidence showed that the policy had lapsed for the non-payment of the premium due May 20, 1928. (b) The evidence showed that the lapse of said policy was never waived by the defendant. (c) The evidence showed that

W. E. Walker, the soliciting agent, did not and had no authority to waive the lapse of said policy.''

We shall consider these different phases of the question in order. It is well to first re-assert certain familiar principles to be applied in such cases. After verdict for plaintiff the propriety of the trial court's refusal to sustain a demurrer to the evidence must be decided upon the hypothesis that all evidence favorable to plaintiff shall be taken as true and that she is entitled to all favorable inferences reasonably deducible therefrom, but at the same time all inferences favorable to defendant must be rejected. [Thomas Cusack Co. v. Refining Co., 261 S. W. 727.]

It is also well settled that where the affirmative defense of non-payment of a premium on an insurance policy is relied upon, the defendant has the burden of proving such non-payment. [Lafferty v. Kansas Casualty Co., 229 S. W. 750, 287 Mo. 555.]

In the case at bar defendant offered evidence tending to prove failure of insured to pay the premium due on May 20, 1928. Whether or not defendant produced evidence sufficient to prove non-payment to such an extent as to justify the trial court in directing a verdict for it upon that theory is not now a question before this court. The demurrer to the evidence offered by defendant was general. It was not specifically directed to the question of the insured's failure to pay the premium due. Defendant did not by its demurrer, attempt to distinguish between the different issues in the case, but thereafter submitted the question of non-payment of the premium in its Instruction No. 4. Defendant is now estopped from saying that the question of non-payment of the insurance premium was not for the jury after having itself submitted the question under such circumstances. [Torrance v. Pryor et al., 210 S. W. 430, l. c. 432; Seewald v. Gentry, 296 S. W. 445, l. c. 453; Union Station Bank v. Wangler, 254 S. W. 739; Everhart v. Bryson, 244 Mo. 507, 149 S. W. 307.]

Moreover, if the question of waiver remained in the case, the court could not have directed a verdict even if the evidence did show beyond the shadow of a doubt that the policy had lapsed. We therefore deem it unnecessary to review the evidence on that point, the documentary portion of which, consisted of defendant's card system record tending to show non-payment of the premium on July 20, 1928, to which date payment had been extended. In fact the jury found the issue as to the lapse of the policy for defendant, as their verdict clearly indicates. We rule defendant has waived the point that plaintiff's prima-facie case, made by the introduction of the policy, was destroyed by evidence of non-payment of the premium.

We come now to defendant's point (b) on the demurrer to the evidence, i. e., that the evidence showed the lapse of said policy was never waived by defendant. Plaintiff's testimony on this question was as follows:

"That she was the mother of the deceased, Archie D. Daniel; that she lived at Benton; that her son died on August 31, 1928; that she made proof of death; that the blanks that she used for this purpose were secured from W. E. Walker, a representative of the defendant, who lived at Cape Girardeau, Missouri; that the said Walker saw her at her home about a week after her son's death when he brought papers to her for her to sign; that she did not know who drew up the papers; that an attorney, a Mr. Montgomery, represented her; that she sent Mr. Walker to Mr. Montgomery; that Walker made one trip to her house before she signed the paper and was accompanied by Mr. Montgomery; that she told Walker in the presence of Montgomery that he (Montgomery) was her lawyer; that she does not know whether or not the premium due May 20, 1928, on the policy involved had been paid by her son; that she did not pay it for him; that he would pay them himself; that the first time she got any information that the defendant was claiming that the policy was lapsed was two or three months after her son's death; that she expended, through her husband, the following money for getting the proof of loss on the policy for the defendant: Dr. Wade, $2.00; Dr. Haw, $2.00; Mr. Harris Rodgers, $1.00; Mr. Montgomery, $5.00; she stated that she still owed something to Mr. Montgomery.

"On cross-examination she testified that it was a few days after her son's death that she employed Mr. Montgomery to look after collection of the policy; that she does not remember positive, but she thought she signed two papers in making the proof to the defendant; that the sums spent in getting up the proofs were spent in connection with the policy involved in this case; that she does not know how much she spent in connection with the proofs involved in another policy."

She further testified she did not send to W. E. Walker, defendant's representative, and ask him to bring blanks for proof of loss on the policy, but her testimony indicates that he came voluntarily.

M. E. Montgomery, plaintiff's attorney, testified that shortly after the death of plaintiff's son she turned over the policy involved herein and another policy; that thereafter Mr. Walker (defendant's insurance agent) came to his office in Benton and told him (Montgomery) that he (Walker) was getting up proof of death and they got such information off the policies as Walker wanted; that Walker furnished the blank proofs of loss; that he understood Walker (who lived in Cape Girardeau some twenty miles from Benton) had been representing the Aetna Life Insurance Company (defendant) for a great many years; "that after Walker copied the information off of the policies he and Walker went to the plaintiff's home in the evening and there Walker asked her for some further information; that at that time she signed the proof of loss and a notary being unavailable, Mr. Walker left the proof of loss with the witness with

instructions on the next morning to take a notary, or to take the plaintiff before a notary, and get her to acknowledge the proof of loss; that it is his recollection that they also went that night to see Dr. Wade, who was the attending physician, as requested by Walker, but he believed Dr. Wade was not in that night; that he (Montgomery) saw Dr. Wade the next morning and that Dr. Wade filled out the physician's certificate, and that after the certificates were acknowledged both by the plaintiff and Dr. Wade the witness mailed them to Walker, as instructed, the said mailing apparently being on September 8, 1928; that later Walker communicated with him, informing him that the defendant wanted a further certificate from Dr. Wade as to just when he had attended the deceased and what his diagnosis was and also wanted a certificate from Dr. Haw as to whether Dr. Haw had attended him and what his diagnosis was, and in response to this request the witness went again to Dr. Wade and got him to make out a new certificate; also to Dr. Haw and got him to make out the certificate wanted, and mailed the two certificates to Mr. Walker in a letter.''

It is admitted defendant received the proofs of loss on September 14. Thereafter, on September 21, defendant wrote its agent Walker the following letter:

''With reference to policy 285698, the company's records show that the policy lapsed for nonpayment of the May, 1928, premium. Please advise if the insured requested extended privilege for this policy and, if so, send such information as you may have in writing covering this request.

''Cordially yours,<br>GORDON H. CAMPBELL (Signed).''

In answer to Montgomery's letter defendant's agent Walker replied on September 27, 1928, requesting further information from the doctors Haw and Wade, but not mentioning the fact that the policy had lapsed. There was further communication between Montgomery and Walker by telephone and finally on October 10, 1928, Walker wrote Montgomery the following letter, i. e. (caption omitted).

''With reference to policy numbered 285698 I am advised that the company is compelled to comply with the Statutes of Missouri at the time the policy was issued, and, therefore, owing to the fact that no request was made by the insured to put his policy on extension, the company is liable only for an amount equal to the balance of the cash value of this policy.

''The records show that insured borrowed $245 on this contract, and the limit of loan value at the time the policy lapsed amounted to $262.50, therefore leaving a balance of $17.50 due insured's estate, etc.''

In regard to this letter and his employment by plaintiff, Mr. Montgomery was examined and testified as follows:

"Q. When was the first time that any person representing the defendant, or the defendant by or through any person, made any claim this policy had lapsed? A. When I received that letter dated October 10.

"Q. At that time did you have, as a representative of the plaintiff in this case, any information that the defendant in this case was making any claim that this policy wasn't binding? A. I didn't have such information until I received that letter; that was the first information I had that there was any objection to the policy.

"Q. Tell the jury whether or not the time you put in and the expense you had gone to, if any, in the matter of making this original proof and this additional proof, when that was done with reference to the time you were advised that the policy was claimed to be lapsed? A. All of that was done before I received any word that there was anything objectionable about the policy.

"Q. Tell the jury whether or not Mrs. Daniel, the plaintiff in this case, expended any money in the matter of securing the money on the policy in question or making proof and all prior to this information that the policy was claimed to be lapsed? A. I don't remember, Mr. Ward, whether I was paid anything before.

"Q. I don't mean whether you were paid then, but whether or not the work done before this has been paid for by her. A. She has paid me $5.00."

Thereafter W. E. Walker sent plaintiff defendant's check for $174.77, which included not only the amount defendant claimed was due under the policy in suit ($17.50), but also the surrender value of the other policy and unearned premium. This check was refused and returned to defendant by Mr. Montgomery after consultation with plaintiff.

On cross-examination Montgomery testified as follows:

"So far as my information went, both policies were on the same foundation. I understood this information was furnished for both of them. I didn't know there was any difference between them at that time. I understand now that there is a difference. I know by the defense you are making that the defense in this case is lapse of the policy and that is not a defense in the other case. I have seen the answer in both cases, and by the defense asserted, the defense of lapse is only in this lawsuit. The defense in the other case has to do altogether with the state of health and habits of the assured."

Further testifying Mr. Montgomery said: "When Mr. Walker came to Benton to make up this proof of death he did not tell me that this policy had lapsed; I don't have any recollection of it. I have no recollection of him telling me there was anything wrong with either of the policies until later on; I have no recollection that Mr. Walker told me that Wellman called him up before Daniel's death and asked him about the policy. My best judgment is I did

not have any such conversation and my judgment is that I got information that the company was denying liability on this policy on October 10, 1928.''

Defendant offered evidence that its agent, Mr. Walker, did discuss the matter of the lapse of the policy in suit with Mr. Montgomery and introduced a letter from its office at Little Rock, Ark., of date September 15, directed to Mr. Walker advising him that the policy had lapsed in May, 1928.

Plaintiff contends the foregoing evidence is sufficient to establish a waiver of the lapse of the policy because (a) the head office knew from their books that the policy had lapsed on July 20, 1928, and (b) having such knowledge immediately after the death of insured, their agent drove from Cape Girardeau to Benton, to have proof of death filled out, which was done at his request; and because (c) Walker mailed these to defendant on September 12, after which time defendant knew that plaintiff was making claim under the policy and also knew Walker was handling the claim and approved thereof by accepting his acts; and (d) after receiving the proofs of death on September 14, defendant failed to deny liability at once, but directed Walker to obtain further proof.

On the other hand defendant says there is no proof of waiver because Walker did not represent it as agent with authority to waive the lapse of the policy; that the beneficiary was put to no expense; that Mr. Walker did inform plaintiff's attorney that the policy had lapsed and that this was admitted by plaintiff's attorney.

Much of the briefs on both sides is devoted to a discussion of the facts and the conclusions reached are dependent upon whether the jury believed one state of facts or the other. Here we are concerned only with the question of whether or not there was any substantial evidence sufficient to support a finding of waiver. The law does not favor forfeitures any more than equity and it is held that slight circumstances will suffice to establish a waiver of the grounds for forfeitures. In Shearlock v. Mutual Life Ins. Co., 193 Mo. App. 436, this court said: ''Forfeitures are not favorites of the law, and especially of the insurance law. In Keys v. Knights & Ladies of Security, 174 Mo. App. 671, 680, 161 S. W. 345, the court said: 'Slight evidence, indicating an intention to waive, will be sufficient to prevent a forfeiture from taking effect and thereby defeating valuable rights. [Francis v. A. O. U. W., 150 Mo. App. 347; l. c. 356.] A waiver of forfeiture may be inferred when the insurer, after knowledge of the act of forfeiture requires the assured, by virtue of the requirements in the policy, to do some act or incur some expense.' '' [l. c. 436.]

It is quite generally held that where the life insurance company, with knowledge of the grounds for forfeiture, requires the beneficiary to furnish proofs of death at some trouble and expense, it is estopped

to insist on a forfeiture, unless the insured knows the validity of the policy will be contested. [37 C. J., p. 538, par. 271; 14 R. C. L. 1197, Sec. 576; Hendrickson v. Grand Lodge, A. O. U. W., 120 Minn. 36, 138 N. W. 946; German Ins. Co. v. Allen, 69 Kan. 729, 77 Pac. 529; Burnham v. Interstate Casualty Co., 117 Mich. 142, 75 N. W. 445.]

In the latter case (by a divided court) the Supreme Court of Michigan went so far as to hold that where the insurance company furnished blanks at the beneficiary's request, knowing at the time there was sufficient ground for forfeiture of the life policy, and although the blank proof of loss contained a general statement reserving the right to insist on breach of conditions in the policy, yet it was held the act of the company constituted a waiver. It was said: "The general statement appended to the blank proof of loss, reserving a right to insist upon a breach of conditions, should not be held to reserve a defense known to the company at that time. [Marthinson v. Insurance Co., supra.] Nor do I think that the fact that the information that Mr. Winans had other insurance was not derived from the beneficiaries affects the question. It is knowledge of the fact, and the action of the company, requiring the beneficiaries to incur expense, which renders it an act of bad faith to thereafter seek to avoid the policy." [75 N. W. l. c. 450.]

In Keys v. Knights & Ladies of Security, 174 Mo. App. 671, l. c. 606, it is said that: "The authorities are very strict in holding a defense waived where the company, with knowledge of the facts, causes the plaintiff to go to extra trouble and expense in furnishing proof since such is, by implication, a recognition of the continued validity of the policy."

Then follows a review of numerous authorities in support of the proposition.

In Schusterman v. Insurance Company, 253 S. W. 91, the general principle was thus stated: "(1) The law is well settled in this State that: 'If in any negotiations or transactions with the insured after knowledge of facts which would otherwise work a forfeiture, the insurance company requires the insured, in compliance with the provision of the policy, to do some act or acts, incurring trouble or expense, the right to insist upon a forfeiture will be thereby waived.' [Tinsley v. Aetna Ins. Co., 199 Mo. App. 703, 205 S. W. 78; Bowen v. Ins. Co., 69 Mo. App. 272, etc.," l. c. 95.]

Applying these general principles to the facts in this case it seems to us the question of waiver was at least one for the jury. The evidence shows the premium was due on the policy in suit May 20, 1928, and the time of payment extended to July 20, 1928. If the premium was not paid defendant's records revealed that fact and defendant must be charged with knowledge thereof at all times subsequent to the extended date. The insured, Archie D. Daniel, died

on the 31st day of August, 1928. About a week thereafter W. E. Walker, defendant's agent, who lived at Cape Girardeau, came to plaintiff's residence in Benton, bringing blank proofs of death. How he learned of the death does not appear, but at any rate, his coming was without request from plaintiff. The proofs were made out, the same proofs being used for the policy in suit and another policy issued to deceased by defendant company. Plaintiff had placed the matter in the hands of an attorney and went to some expense and trouble in preparing the proofs. The fact that the proofs covered both policies is of no consequence in our judgment. The expense cannot be limited to the procuring of proof to one or the other. It was apparently more convenient and economical to let one proof do for both policies. According to the evidence of plaintiff and her attorney, Mr. Montgomery, neither plaintiff not the attorney had any knowledge that the policy had lapsed at the time the proofs were being prepared. It is true that defendant's agent Walker testified he discussed the matter of the lapsed policy with plaintiff's attorney, Montgomery, at the time the proofs were being prepared. But Montgomery denied this, stating his first knowledge thereof was on October 10, when he received the letter, heretofore set out, from Walker. Defendant relies on an admission made by Montgomery when Walker was testifying, but as to that it is sufficient to say the admission could not be said to admit the truth of all Walker had stated in regard to their conversation, particularly in view of Montgomery's positive statement as a witness that he had no knowledge as to the lapse of the policy at that time. After the proofs were made out at Walker's request, they were mailed to him at Cape Girardeau on the 9th of September, 1928, and forwarded by him to defendant's general office in Little Rock, Arkansas, and there received September 14, 1928. At that time, if not before, defendant knew plaintiff was making a claim under the policy in suit and also knew from its records that the policy had lapsed. On September 21, defendant wrote to its agent Walker suggesting the lapse of the policy. But this fact was not then communicated to Montgomery or plaintiff, but Walker asked additional proof in his letter of September 27, which was furnished at some trouble and expense to plaintiff. Finally, on October 10, as heretofore stated, defendant, through its agent Walker, denied liability except for the surrender value of the policy, on the ground that the policy had lapsed. Under this evidence and the authorities heretofore quoted, plaintiff certainly made the question of waiver one for the jury unless it may be said that the acts of Walker in connection therewith, were not binding on defendant.

This brings us to the 3rd point made by defendant, i. e., that Walker had no authority in the premises to waive the lapse of said policy. It may be granted that Walker originally had no such authority. As to whether or not the policy contained any provision

particularly limiting the authority of the soliciting agent the record in this case does not show. But defendant's conduct indicates that after the proofs were in, it adopted what Walker had done and placed all further dealings with plaintiff in Walker's charge. Mr. Walker, himself, testified that:

"Yes, I have some letters from the head office or from our chief department requesting additional proof to that furnished in the original proof of loss. In reference to that matter I wrote Monty (Montgomery) a letter about that matter. I may have telephoned him, but I think I wrote him, and he went out and got additional proof on this policy after I telephoned him. This letter of mine to Montgomery, written September 27, was after Montgomery had sent the certificate (doctor's certificate), but I don't know whether it was telephoned for or not. Monty wrote me September 23, after he had gotten up this new material asked about. I ought to have a letter which I wrote to Montgomery for this new proof; if I haven't a letter I probably telephoned him, I don't know. Probably I did telephone him; he and I had some telephone conversations. . . . I got the information from the company about the time I wrote this letter to Montgomery, October 10, that the policy was lapsed and they denied liability."

Defendant did not inform plaintiff directly that the policy had lapsed but requested additional proof through Walker and never at any time questioned his authority to act but appeared to accept what he had done, and furthermore, carried on all correspondence with plaintiff through him. These acts, we think, tended to prove ratification of Walker's assumed authority.

In the case of Beswick v. Natl. Cas. Co., 206 Mo. App. 67, (cited by defendant), it is said: "And even if the agent exceeded his authority in fixing the commencement of the contract, still the Company, by accepting and retaining the money secured under such circumstances by their agent, may ratify the act of its agent, may waive the above quoted provision, and be estopped from denying the authority of such agent. [Bell v. Missouri State Life Ins. Co., 183 Mo. App. 390; Morman v. Order of United Com. Trav. of America, 163 Mo. App. 175]."

Another case cited by defendant states: "This is a case where the proposition for insurance was made by a live man, in good health, to an agent authorized to receive it and to transmit it to the defendant company. It was then for the approval or rejection of the company. As matters stood contractually, the company could have rejected it, and more than that, it could have relied upon the provision which we have quoted from the application, that there was to be no contract until a policy was issued and delivered. But the company did not choose to stand on these conditions. It waived them by accepting the premium which was paid for insurance, with full

knowledge of what the payment was for and of the assured's death. By that act it adopted the agent's acts as consummating a contract of insurance without a formal approval of the application by the medical director, or the issuance of a policy." [Rhodus v. Life Ins. Co., 156 Mo. App. 281, l. c. 285.]

To the same effect are Shock v. Fire Ins. Co., 154 Mo. App. 394, l. c. 492-493; Madison v. Williams, 16 S. W. (2d) 426; Gentry v. Connecticut Mut. Life Ins. Co., 15 Mo. App. 215. Under the general law of agency, too, there can be no doubt that defendant's acts were sufficient to at least make a question for the jury on the proposition of ratification. We rule this point against defendant.

The only other question briefed by defendant relates to certain alleged prejudicial arguments by plaintiff's attorney wherein he told the jury that defendant kept crooked books. We believe defendant was not prejudiced by these remarks because it appears that the jury found for defendant on the issue of the failure of insured to pay the premium, which was the only purpose for which the books or card system of defendant were introduced in evidence.

It is our opinion defendant had a fair trial and we find no error.

The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.