ED CURTIS v. INDEMNITY COMPANY OF AMERICA, Appellant.—37 S. W. (2d) 616.

Division One, March 31, 1931.

W. E. *Moser* and *Hensley, Allen & Marsalek* for appellant.

*C. W. Crossman* and *Jeffries, Simpson & Plummer* for respondent.

SEDDON, C.—Plaintiff (respondent here) instituted this action in the Circuit Court of the City of St. Louis on November 16, 1925, to recover from the defendant insurance company (appellant here) for the total loss and destruction by fire of a Pierce Arrow roadster automobile owned by plaintiff, who was insured against loss of said automobile by fire under a written policy of insurance issued by defendant in consideration of the payment by plaintiff of a stipulated premium fixed by defendant.

The petition alleges, in substance, that defendant is a corporation organized and existing under the laws of Missouri, and is engaged in the business of insuring persons against loss and damage of property by fire and other hazards; that on March 3, 1923, in consideration of a premium of $33.75 paid to defendant by plaintiff, the defendant did insure plaintiff in the sum of $7500 against loss and damage by fire arising from any cause whatsoever, within the limits of the United States, upon a certain Pierce Arrow roadster automobile, for a term of one year beginning on March 3, 1923, and ending on March 3, 1924; in accordance with the terms and conditions of a certain contract or policy of insurance, a verified copy of which is attached to the petition; that on January 5, 1924, while said contract of insurance was in full force and effect, the said automobile, owned by plaintiff, and so insured by defendant, was totally destroyed by fire at or near Yates Center, Kansas; that plaintiff was the sole owner of said automobile at the time it was totally destroyed by fire, at which time said automobile was of the value of $7500, and in excess thereof; that plaintiff had performed all of the terms and conditions of said contract of insurance required to be performed by him, and on February 26, 1924, had made, executed and delivered to defendant a sworn proof of loss; that, according to the terms of said contract of insurance, the amount of defendant's liability thereunder was $7500, which amount was payable to plaintiff sixty days after the latter date; that plaintiff had frequently demanded of defendant the payment of said sum and amount, but that defendant had refused and failed to pay the same, or any part thereof, and that said failure and refusal to pay on defendant's part is vexatious. In addition to the foregoing, the petition contains the following paragraph:

"That shortly thereafter (i. e., after the fire) the defendant sent its adjuster to visit the premises and view the destroyed automobile, and thereupon said adjuster agreed and acknowledged to the plaintiff that said car was totally destroyed by fire, and that the loss and damage thereon was in the amount of seven thousand five hundred dollars, and in excess thereof, and that the defendant was indebted to said plaintiff in the sum of seven thousand five hundred dollars,

the full amount of its liability under said contract of insurance, and said adjuster informed the plaintiff that the defendant would shortly thereafter pay and discharge its obligation in the sum of seven thousand and five hundred dollars.''

The petition prays judgment against defendant for the principal sum of $7500, with interest thereon from April 29, 1924, at the rate of six per cent per annum, and for the additional sums of $750 as damages, and $750 as a reasonable attorney's fee, as penalty for defendant's vexatious refusal to pay said loss.

The defendant filed a motion to strike the above-quoted paragraph from the petition, upon the grounds that the allegations thereof do not constitute any part of plaintiff's alleged cause of action, and do not constitute a cause of action or any part of a cause of action, and are redundant, irrelevant and immaterial. The motion to strike said paragraph from the petition was overruled by the trial court, whereupon defendant filed an answer, admitting the execution and delivery of the policy of insurance mentioned and referred to in the petition, and denying generally each and every allegation of the petition.

A trial and submission of the cause to a jury resulted in a unanimous verdict and finding of the issues in favor of plaintiff for $7500, the face amount of the insurance policy in suit, together with interest thereon from April 29, 1924, to October 18, 1927, amounting to $1559.56, and the further sums of one dollar as damages, and $500 as attorney's fees, as penalty for defendant's vexatious refusal to pay the loss. After unavailing motions for new trial and in arrest of judgment, defendant was allowed an appeal to this court from the judgment entered in accordance with the verdict.

The evidence discloses that on or about June 21, 1921, plaintiff purchased through the Dey Motor Car Company, sales agent for the Pierce Arrow Motor Car Company, in Kansas City, Missouri, and there was then delivered to plaintiff, a 1921 model, specially built, four-passenger Pierce Arrow roadster automobile. The automobile was built under a special order from plaintiff, given some time prior to June, 1921, and differed from the standard model and type of automobile manufactured and put on the market by the automobile manufacturer, in that it was equipped with certain parts, conveniences and accessories, and included certain additional features and equipment, which were not installed and included in the standard type or make of Pierce Arrow automobile. Upon, or immediately after, the delivery to plaintiff of this specially built automobile in June, 1921, plaintiff caused certain changes or alterations to be made therein, and caused additional equipment and accessories to be installed upon the automobile. Plaintiff testified that, some six or eight months after receiving delivery of the automobile, ''I met the factory representative, who informed me of the improve-

ments that were coming out in 1923; those improvements consisted of additional equipment—the Lancaster balancer on the engine, different type valves, two cross members under the frame for reinforcement, the mounting of the engine was raised and put in on rubber instead of springs, a different kind of carburetor was put on it, and several other things that I don't remember, that I authorized them to make that would bring it up to the latest model, and make it a 1923 automobile.'' Most, if not all, of the alterations, and the installment of additional equipment, were made prior to the issuance of the policy of insurance on March 3, 1923.

The evidence further tends to show that the Pierce Arrow automobile was not generally used by plaintiff in his business, but was used almost entirely as a pleasure vehicle. Plaintiff was engaged in the oil business, his field of operations being in the vicinity of Yates Center, Kansas. While engaged in such oil operations in Kansas, plaintiff frequently left the automobile in storage for months at a time in public or private garages in Kansas City. According to plaintiff's testimony, he used the automobile occasionally in and around Kansas City, whenever he came in from his business operations in the oil fields. He testified that he always kept the automobile in the very best condition possible, having it oiled, greased and ''tuned'' frequently. Whenever the automobile was not in use, it was kept standing upon jacks, in a heated garage, and covered over with a soft canvas canopy. Prior to the destruction of the automobile by fire on January 5, 1924, it had been driven approximately 17,000 miles. During the period of the insurance coverage, from March 3, 1923, to January 5, 1924, the day of the fire, it had been driven about 2500 miles, so that the automobile had been driven something like 14,500 miles prior to the date of issuance of the insurance policy.

In the latter part of December, 1923, plaintiff was engaged in certain oil drilling operations near Batesville, a town about eight miles distant from Yates Center, Kansas. He then drove the Pierce Arrow automobile from Kansas City to Yates Center, Kansas, where he kept the automobile in a public garage. On the afternoon of January 5, 1924, according to plaintiff's testimony, he drove the automobile from Yates Center to an oil well located at the scene of the drilling operations near Batesville, Kansas, where he remained until about 7:30 o'clock in the evening, and until after dark. Upon starting the engine of the automobile, with the intention to return to Yates Center, plaintiff says that he discovered that the automobile was almost out of gasoline. He testified that he drove the automobile to a pond of water, located a short distance from the oil well, where there was a small gasoline engine used to pump water from the pond to the drilling machinery at the oil well, at which pond there was kept a sixty-gallon drum filled with gasoline for use in operating the

gasoline engine at the pond. He took with him in the automobile an empty five-gallon can, which he filled with gasoline poured from the larger drum. He then poured the contents of the can into the gasoline tank of the automobile. After filling the can a second time from the drum, and while pouring the contents of the can into the tank of the automobile, plaintiff testified that he then realized for the first time that he was smoking a lighted cigarette, which he thought was "a very foolish stunt to be doing while fooling with gasoline," and, in attempting to get rid of the lighted cigarette, it fell into the gasoline that was being poured into the tank of the automobile, immediately resulting in the fire which totally destroyed the automobile, so that nothing remained of the automobile after the fire but a charred mass of twisted iron and wreckage.

On the evening of the fire, plaintiff reported the loss and destruction of the automobile by telephone from Yates Center, Kansas, to the insurance broker in Kansas City through whom he had procured the policy of insurance. About a week or ten days later, plaintiff went to Kansas City and talked with the agent of defendant who had issued the policy of insurance, who told plaintiff that the loss had been reported to defendant and would be taken care of, and that an insurance adjuster named Guy Shirley, of Kansas City, had been notified of the loss and had been directed by defendant to go to the scene of the fire and view the destroyed automobile. Upon the same day, plaintiff went to see Mr. Shirley, who, according to plaintiff's testimony, represented himself to plaintiff as being the adjuster for defendant. Plaintiff testified that he had not theretofore been personally acquainted with Shirley. At such meeting with Shirley in Kansas City, plaintiff arranged to meet Shirley in Yates Center, Kansas, two days later. At the appointed time, plaintiff and Shirley met in Yates Center, Kansas, from whence they drove to the scene of the fire, and Shirley viewed the wreckage of the automobile. Plaintiff testified that he and Shirley then agreed that the insured automobile was a total loss, and that the amount of the loss exceeded $7500, the face of the insurance policy, which amount Shirley assured would be paid to plaintiff shortly thereafter.

Plaintiff proffered in evidence at the trial a certificate of title, duly issued by the Commissioner of Motor Vehicles of Missouri, certifying that plaintiff was the owner of the Pierce Arrow automobile at the time of the fire, and during the term of the insurance policy. Plaintiff also proffered in evidence the policy or contract of insurance issued to plaintiff by defendant on March 3, 1923, together with the original sworn proof of loss furnished by plaintiff to defendant on February 26, 1924, which sworn proof of loss defendant admitted it had received on February 28, 1924, and wherein plaintiff claimed that his loss or damage, by reason of the total destruction of the automobile, was in excess of $7500. Plaintiff also testified that he

had paid the stipulated premium at the time the policy of insurance was issued and delivered by defendant.

The policy of insurance so issued and delivered to plaintiff provided that defendant thereby agrees "to indemnify the assured against direct loss or damage caused to the body, machinery and equipment of the automobile described herein, . . . to the extent of the actual cash value of the damage to or destruction of the property at the time of the damage or destruction, or the cost of its suitable repair or replacement, but in no event to exceed the amount of insurance herein specified, by the following perils: (a) Fire, arising from any cause whatsoever, and lightning."

The policy contained the following further provisions: "The policy does not cover and the Company shall not be liable. . . . (c) Beyond the Actual Cash Value of the damage to or destruction of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly, with a proper deduction for depreciation however caused (and without compensation for the loss of use of the property) and in no event shall it exceed what it would cost to repair or replace the automobile or such parts thereof as may be damaged with others of like kind, quality and condition; such ascertainment or estimate shall be made by the Assured and this Company, or if they differ, then by appraisal as herein provided. . . .

"In the event of disagreement as to the amount of loss or damage to the insured automobile, the same must be determined by competent and disinterested appraisers before recovery can be had hereunder. The Assured and the Company shall each select one, and the two so chosen shall then select a competent and disinterested umpire. Thereafter the appraisers together shall estimate and appraise the loss or damage, stating separately sound value and damage; and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss or damage; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire. The Company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the sum for which the Company is liable, for loss or damage to the insured automobile, pursuant to this policy, shall be payable sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required, have been received by the Company, including an award by appraisers when appraisal is required hereunder."

The description of the automobile is set out in the policy of insurance as follows: "Model, year: 1921; Trade Name: Pierce

Arrow; Type: Roadster, Special Body; Factory Number: 322353; List Price: Special.'' The policy of insurance also sets forth that "the facts with respect to the purchase of the automobile described are as follows: Purchased by the Assured: June, 1921; New or second hand: New; Actual Cost to Assured, including equipment, $9,500.''

Over the objections of defendant, plaintiff was allowed to testify upon the trial respecting certain conversations between plaintiff and the defendant's adjuster, Shirley, as follows: "We drove out and examined the car, and he (Shirley) checked or passed on it, went over it thoroughly, and came back to the hotel. He (Shirley) said he looked it all over. He said, 'There is no use wasting any more time out here. It is a total loss. We might as well kiss our policy goodbye and we will go to town.' And we went in to town. Mr. Shirley went to Kansas City on the evening train and told me when he left—he says: 'There is no need of you making out any proof of loss or any further papers about this. I see your loss is more than seventy-five hundred dollars. It is a total loss. The company might as well kiss their policy goodbye. I will send in my report and you will have your draft for your car in a few days.' I returned to Kansas City two or three days later and saw Mr. Shirley at his office and talked with him about this matter. I asked him if he had my check for me, and he says, 'No, I have not, but,' he says, 'it won't be but a matter of a day or two.' He says, 'I haven't heard from them yet.' I said, 'Is it all settled?' He says, 'So far as I know it will be settled and your draft should be here in a few days; your loss is more than seventy-five hundred dollars, and there isn't anything else for us to do.' I asked him if he had checked over the equipment. He says, 'Yes, sir, I have checked over the equipment very thoroughly with Mr. Dey's books and his shop tickets; that was more than enough to satisfy me.' Mr. Shirley says: 'I have been out to Lang's shop, who adjusted and tuned up your car this last time, and I find that the car was in perfect condition, as good as a new car, if not better, because you have been such a "nut" about it.' He says, 'Our company will take care of you, and you will receive your draft in a few days.' ''

Evidence was adduced by plaintiff that a reasonable attorney's fee in the matter of the institution and trial of the action would not be less than $750.

The trial court gave to the jury the following instructions (among others), numbered, respectively, 3 and 4, at the request of plaintiff:

3. "The court instructs the jury that if you find and believe from the evidence that the Pierce-Arrow automobile described in the policy of insurance introduced in evidence was from March 3,

1923, up to and including January 5, 1924, owned by plaintiff and was on or about January 5, 1924, damaged or destroyed by fire while said policy was in full force and effect; and if you further find and believe from the evidence that thereafter plaintiff gave to defendant notice of said loss or damage and made claim against defendant under said policy of insurance; and if you further find and believe from the evidence that thereafter defendant referred the said claim, if any, to its adjuster and that said adjuster, if you so find, agreed with plaintiff that the loss by fire to said automobile amounted to or exceeded the face amount of said policy, to-wit, $7500, then you are instructed said agreed amount, if any, became the amount due plaintiff from defendant under said policy of insurance, and if you so find your verdict should be for plaintiff for said sum of $7500, together with interest thereon at the rate of six per cent per annum, from April 29, 1924, to this date.''

4. ''The court instructs the jury that one who is appointed as an adjuster of an insurance company has power to determine the amount of the loss and damage; and his action in agreeing on the amount of the loss is binding on the insurance company unless the authority was by the insurance company limited and such limitation was brought to the knowledge of the person dealing with him as such adjuster, and if you find and believe from the evidence that Guy W. Shirley was appointed by defendant as its adjuster to adjust the loss and damage in this case, and that said Guy W. Shirley while so employed did meet with the plaintiff and agreed with plaintiff that the loss and damage by fire to his automobile so insured by defendant was on or about the 5th day of January, 1924, equal to or in excess of $7500, then your verdict should be for plaintiff in the amount of $7500, together with interest thereon at the rate of six per cent per annum from April 29, 1924, to this date.''

The appellant presents ten separate assignments of error, some of which may properly be grouped together and discussed as a single assignment of error. We will discuss and rule the several assignments of error in the order presented in appellant's printed brief and argument.

I. Three of the assignments of error presented by appellant relate to the action of the trial court in the following respects: (a) in overruling defendant's motion to strike from the plaintiff's petition the paragraph (hereinabove quoted) alleging an adjustment and ascertainment of the amount of the loss under the policy of insurance, and an agreement with defendant's adjuster that the amount of the loss exceeded $7500. and that defendant would pay and discharge its

obligation to plaintiff in that amount; (b) in giving to the jury, at request of plaintiff, the (above-quoted) instructions numbered 3 and 4; and (c) in permitting plaintiff to testify upon the trial respecting the conversations had between plaintiff and defendant's adjuster, Shirley.

It is contended by appellant that plaintiff has attempted to recover upon an independent cause of action, based upon an oral agreement or modification of the written policy of insurance, alleged to have been made by defendant through its adjuster, and which alleged oral agreement or modification of the policy of insurance is not actionable, as a basis of recovery, because no consideration therefor is pleaded or proved. It is further contended by appellant that plaintiff has neither pleaded nor proved that defendant's adjuster had authority to make any agreement with plaintiff as to the amount and extent of the loss, or to bind defendant by such alleged agreement. As we view and understand the appellant's contention and claim, it is that plaintiff was permitted to recover, not upon the original policy of insurance, but upon a separate, subsequent, and independent oral agreement, wholly unconnected with the original policy of insurance, and which is unsupported by any consideration.

Respondent, on the other hand, urges that, since the policy of insurance under consideration expressly provides that the *"ascertainment or estimate* (of the amount of the loss under the policy) *shall be made by the Assured and the Company,* or if they differ, *then by appraisal* as herein provided,"* the paragraph of the petition, alleging, in substance and effect, that plaintiff and defendant's adjuster had ascertained and agreed upon the amount of the loss (as expressly provided and contemplated by the terms of the insurance policy), is not an attempt to plead and recover upon an independent oral agreement, but that such oral agreement, being referable to the express terms and provisions of the original policy of insurance, becomes, and is, an inseparable part and parcel of plaintiff's cause of action upon the policy of insurance, which is supported by the premium paid by plaintiff to defendant as consideration for the policy of insurance. Hence, respondent insists that no error was committed by the trial court in refusing to strike from the petition the paragraph complained against by appellant, and in admitting the testimony of plaintiff in support of the allegations of said paragraph of the petition, and in submitting the case to the jury under plaintiff's instructions numbered 3 and 4.

Both of the parties rely upon the ruling and decision of the St. Louis Court of Appeals in Gerhart Realty Co. v. Northern Assurance Co., 86 Mo. App. 596, as supporting their respective contentions. The cited case was an action upon a policy of fire insurance,

wherein the insured (plaintiff) sought to prove that the insured and the insurer's agent or adjuster had viewed the building insured under the policy, and which was partially destroyed by fire, and had thereupon ascertained and agreed upon the amount of the loss, and that the insurer's agent or adjuster had promised and agreed to pay the insurer's pro rata share of said agreed loss. The trial court directed a nonsuit, and the plaintiff (insured) appealed to the St. Louis Court of Appeals. Said the Court of Appeals, speaking through Biggs, J. (l. c. 598): "The theory of the circuit court, as indicated in the briefs of the defendant, was that the adjustment or ascertainment of the loss as above stated and the agreement of defendant's local agent to pay the defendant's portion thereof, constituted a new contract, and that the plaintiff should have declared on it, and not on the original contract as represented by the policy. We cannot accept the above view." The writer of the opinion then remarks that, if the ascertainment and adjustment of the amount of the loss can be viewed as a new and independent contract, it was without consideration to support it. But the learned writer of the opinion then proceeds to hold (l. c. 599, 600): *"We deny that the legal effect of the transaction between plaintiff and defendant's agent was to make a new and independent contract.* . . . Our conclusion is that the transaction between the plaintiff and the agent of the defendant must be regarded as only a compliance with that condition of the policy which required the parties to agree among themselves as to the amount of the loss. . . . For these reasons we think that the action was properly brought on the policy, and therefore the circuit court committed error in directing a nonsuit." We regard the decision in the Gerhart Realty Co. case as being favorable to, and as supporting, the contention of respondent herein, rather than as supporting the contention of appellant.

A contention somewhat similar to that raised by the appellant herein was ruled against by the St. Louis Court of Appeals in Ramsey v. Underwriters Assn., 71 Mo. App. 380, 383, which was a suit upon a policy of fire insurance, wherein, in addition to the usual averments in declaring upon a policy of insurance, the petition furthermore alleged (as in the instant case) that, "in pursuance of notice and proofs of loss the defendants sent their adjuster for the purpose of adjusting and settling the loss, and that the adjuster and plaintiffs agreed that the amount of the liability of the defendants under the policy was $342.21, which amount the adjuster promised that the defendants would pay." Said the Court of Appeals in ruling the matter: "Objection was made to the introduction of evidence as to the agreements or contracts of the adjusting agent of the defendants, upon the ground that there was no

affirmative evidence that the adjuster had authority to bind the defendants. We have decided in McCollum v. Insurance Company, 67 Mo. App. 66, that *the business of an adjusting agent is to ascertain the loss and agree with the assured on a settlement.* The same principle is declared and enforced in the more recent case of Bowen v. Ins. Co., 69 Mo. App. 272. This also answers the objection made by defendants to the first instruction given for plaintiffs, to the effect that it did not require the jury to find that in making the adjustment Davenport (defendants' adjuster) had authority to bind the defendants. The instruction told the jury in effect, that if Davenport was the adjusting agent of the defendants, and that he adjusted the loss and agreed to pay plaintiffs the sum of $342, then the plaintiffs were entitled to a judgment for that amount with interest added.''

In Grier Bros. v. Northern Assurance Co., 183 Pa. St. 334, 343, 344, wherein it was contended that an alleged adjustment of a loss by fire, by and between the insured and the insurer, acting through its adjuster, coupled with an alleged promise or agreement by the insurer, through its adjuster, to pay the agreed amount of the loss, constituted a new, distinct, and independent contract, which was actionable as such independently of the policy or contract of insurance, the Supreme Court of Pennsylvania held: ''While the alleged undertaking is new it is neither independent of, nor separated from, the original cause of action. The policy of insurance still remains as the foundation of the action. The plaintiffs' claim would have no force, in fact no legal existence, without the policy, and there could not possibly be any recovery without the maintenance and enforcement of the liability thereby created. If there was no contract of insurance there was nothing upon which to found a liability to pay anything whatever, and the alleged promise to pay by reason of the settlement necessarily is built upon, and grows out of, the contract liability created by the policy. It is an agreement, and it must necessarily be an agreement, to determine what amount of liability exists under the policy. The essential foundation of any liability is the obligation imposed by the contract of insurance. And it is nothing else than this. . . . It follows that the policy is indissolubly connected with the new engagement, and must be regarded as a part and parcel of the entire liability which the plaintiffs propose to enforce.''

The policy of insurance involved in the present action, by its express terms and provisions, prescribes two certain and distinct methods of ascertainment or estimate of the amount of any loss thereunder, viz.: (1) ''such ascertainment or estimate *shall be made* by the Assured and this Company,'' or, (2) *''if they differ, then by appraisal* as herein provided.'' The policy further provides:

"In the event of *disagreement* as to the amount of loss or damage to the insured automobile, the same must be determined by competent and disinterested appraisers before recovery can be had hereunder. The Assured and the Company shall each select one, and the two so chosen shall then select a competent and disinterested umpire."

Construing a policy of insurance almost identical in its terms and provisions with the policy herein involved, the Kansas City Court of Appeals, speaking through the late Judge ELLISON, in Mc-Nees v. Insurance Co., 69 Mo. App. 232, 241, said: "The contract (or policy) is absolute that there shall be a notice, estimate, and proofs of loss, but it .is *conditional* as to whether there shall be an arbitration; the condition being the contingency of a *failure of the parties to agree.* The parties to the contract have stipulated that in the event of a fire the loss *shall* be ascertained or estimated by themselves, if they can agree. But 'in the event of disagreement as to the amount of the loss' it shall be submitted to arbitration, that is to say, if the parties differ, and arbitration is required. If the parties *agree* on the amount, an arbitration is not required."

Since the policy of insurance declared upon in the instant case expressly provides for two (and only two) methods for the ascertainment of the amount of a loss under the policy—that is, either by *agreement* of the insured and the insurer, or, in the event they shall differ or fail to agree, *then* by appraisal by disinterested appraisers selected by the respective parties—and since the defendant insurer, being a corporate entity, can only act and speak through an authorized agent or adjuster, we are constrained to hold and rule that it was proper for the plaintiff to allege and plead in his petition that the defendant had sent its adjuster to view the destroyed automobile, and that the defendant's adjuster had agreed with plaintiff that the automobile was totally destroyed by fire, and that the amount of the loss was equal to or in excess of $7500, the extent of defendant's pecuniary liability under the policy of insurance. Such agreement as alleged in the petition, in our opinion, is clearly referable to the precise terms and provisions of the policy of insurance declared upon, and the pleading of such agreement cannot properly be held or deemed to constitute an attempt upon the part of plaintiff to recover upon an independent and separable agreement, i. e., one which is wholly outside of the terms and provisions of the policy of insurance, and which must be supported by a new and different consideration than the premium paid to defendant by plaintiff for the policy of insurance.

It may be that the single and particular allegation contained in the paragraph attacked by defendant's motion to strike, to the effect that defendant's "adjuster informed the plaintiff that the de-

fendant would shortly thereafter pay and discharge its obligation in the sum of $7500,'' is superfluous and redundant, and might well have been stricken from the petition, if the motion to strike had been directed to that single and particular allegation. But the defendant's motion to strike was directed to the whole and entire paragraph of the petition, and not to any portion, or single allegation, thereof; so that reversible and reviewable error cannot well be predicated upon the action of the trial court in overruling the defendant's motion to strike the entire paragraph from the petition, if any of the allegations contained in the paragraph to which the motion was directed, as an entirety, are so connected with, and referable to the provisions of, the policy of insurance declared upon in the petition as to properly constitute a part of the cause of action upon the policy. [49 C. J. 692, 693.] The plaintiff's Instructions Nos. 3 and 4 obviously are not predicated upon any promise, assurance or agreement of the adjuster that the defendant would pay and discharge its pecuniary obligation to plaintiff; nor do said instructions, or either of them, ground plaintiff's right to recover upon any promise, express or implied, made by defendant, by and through its adjuster, that defendant would pay any pecuniary amount to plaintiff. The said instructions do not require a finding by the jury, as a prerequisite to plaintiff's recovery, that defendant, by and through its adjuster, had promised or agreed that defendant would pay plaintiff any amount under the policy of insurance. The instructions do require the jury to find, however, as a prerequisite to plaintiff's recovery, that the defendant, by and through its adjuster, did agree with the plaintiff upon the *amount of the loss,* and that the *amount of the loss and damage* by fire to plaintiff's automobile equaled or exceeded the face amount of the policy of insurance, $7500. Such hypothesis of the instructions comports with, and is referable to, the plain provision and requirement of the policy of insurance that the ascertainment or estimate of the amount of the loss or damage *"shall be made by the assured* (plaintiff) *and this Company* (the insuring defendant),'' if the parties to the contract or policy of insurance can and do *agree upon the amount of the loss or damage.* Since the answer filed by defendant denies generally the allegation of the petition that the defendant's adjuster did *agree* with the plaintiff (the *assured*) that the *amount of the loss and damage* was. $7500, and in excess thereof, it was necessary, of course, that plaintiff should offer substantial proof in support of such allegation of the petition (which plaintiff did), and that the issue of fact, whether or not the alleged agreement respecting the amount of the loss or damage was actually made by and between plaintiff (assured) and the defendant (insurer), acting by and through its adjuster, should be submitted to the jury

for their finding and determination (which was done by plaintiff's instructions). The issue of fact so submitted to the jury by plaintiff's Instructions Nos. 3 and 4 was really the only submissible issue in the instant case, under the pleadings and the evidence; this, for the reason that defendant, by its answer, pleaded no affirmative defense against a recovery by plaintiff under the policy of insurance declared upon, and made no claim or defense that defendant was not liable, in any amount, upon its policy of insurance. The defendant has not controverted, or drawn in issue, either by its pleading or by its proof, the matter or question of its liability under the policy of insurance. Hence, we think that the trial court committed no reversible error in instructing the jury that the amount of their verdict should be in the principal sum of $7500, with interest thereon, provided, however, that the jury should find and determine, as a matter of fact, that the plaintiff and the defendant, by and through its adjuster, did agree upon the amount of the loss and damage by fire to plaintiff's automobile as being the sum of $7500, or as exceeding that amount.

Nor do we think that it was incumbent upon plaintiff to affirmatively plead, and to prove, that defendant's adjuster, Shirley, had authority to agree with plaintiff as to the amount and extent of the loss, and to bind defendant by such agreement. The authority of Shirley, as the representative and agent of the defendant insurance corporation, to adjust, ascertain, and settle the amount and extent of the loss, and to bind defendant thereby, may properly and reasonably be inferred from all the facts and circumstances in evidence. [Parsons v. Fire Ins. Co., 132 Mo. 583, 599.] As has been repeatedly ruled by the courts of this State, it is "the business of an adjuster to ascertain the loss and agree with the assured on a settlement; and the adjuster of a fire insurance company, as to the settlement of losses, is the representative of the company, and his acts, within the apparent scope of his authority, are the acts of the company, and binding upon it." [Parsons v. Fire Ins. Co., supra; McCollum v. Ins. Co., 67 Mo. App. 66, 69; Ramsey v. Underwriters Assn., 71 Mo. App. 380, 383; Roberts v. Ins. Co., 94 Mo. App. 142, 151.]

We conclude, therefore, that the trial court committed no reversible error in overruling defendant's motion to strike from plaintiff's petition the (quoted) paragraph complained against, and in permitting plaintiff to testify upon the trial respecting the alleged agreement made with defendant's adjuster as to the amount and extent of the loss and damage to plaintiff's automobile, and in giving to the jury plaintiff's Instructions Nos. 3 and 4. We are not to be understood, however, as holding herein that an insurance company is precluded or estopped from denying liability under its policy of

fire insurance, or from affirmatively pleading or setting up any lawful defense it may have against a recovery upon a policy of fire insurance, merely because of the act of its adjuster in adjusting the loss or damage under the policy, or in agreeing with the insured as to the amount and extent of such loss or damage. Neither are we to be understood as holding herein that the insured under a policy of fire insurance may recover upon any new or independent promise or agreement, unsupported by a good or valuable consideration, to pay to the insured the agreed amount of loss or damage under a policy of fire insurance: for it is the settled and recognized rule in this and other jurisdictions that an accord, when unsupported by a good or valuable consideration, is not actionable. [1 R. C. L. 183, 184; Colonius v. Fire Insurance Co., 3 Mo. App. 56; Giboney v. Insurance Co., 48 Mo. App. 185; Vining v. Fire Insurance Co., 89 Mo. App. 311.] We are not questioning the rule of law announced in the decisions last cited, but we deem such decisions inapplicable to the instant cause of action, wherein a recovery is sought by the plaintiff upon the policy of insurance declared upon in his petition, and not upon an accord. Our holding and ruling herein is predicated wholly upon the pleadings and the proof as appearing and set forth in the record before us in the instant case, and upon such record we have reached the conclusion that the trial court committed no reversible error in respect to the matters complained against by the appellant herein.

II. Appellant assigns error in the admission in evidence, over defendant's objections, of two letters which passed between defendant and its adjuster immediately, or very shortly, after the fire. The two letters were produced by defendant at the trial under a subpoena *duces tecum,* served upon one Pringle, who was the chief officer of defendant's claim department, and who bore the official title of "claims attorney." One of the letters, so produced at the trial in response to the subpoena *duces tecum,* is dated January 11, 1924 (six days after the fire), and is written upon the stationery of defendant insurance company, and is signed by M. I. Ashley, Assistant Claims Attorney, and is addressed to Insurance Adjustment Company, Kansas City, Missouri, of which latter company (it was shown in evidence) Guy W. Shirley was the managing official and the chief adjuster. The said letter reads as follows:

"We are this date in receipt of a letter from Harry A. Burke Insurance Company reporting the total fire loss of the car of the above captioned assured, with advice that they turned this matter over to you for adjustment.

"Upon going over the accident report it seems to us that this assured was exceptionally careless and wholly responsible for this loss in dropping a lighted cigarette stub in the gasoline tank. On

the facts of this case it would seem that it is one that would bear considerable investigation, not only as to the origin of the fire, but as to the approximate value of the car.

"We trust you will let this matter have your urgent and most careful attention and we await your report at your earliest convenience.

"Kindly do not adjust this loss without forwarding recommendations to us unless you feel that the adjustment is so reasonable it cannot afford to be turned down. It would seem to us that the fact that the assured was careless in this accident would be ample reason for holding this loss down to a minimum."

The other letter is dated January 18, 1924, and was written to defendant by the Insurance Adjustment Company, and is signed, on behalf of the Insurance Adjustment Company, by Guy W. Shirley. It contains a full and complete report of the adjuster's investigation of the facts and circumstances attending the fire, and of the amount and extent of the loss. It also contains an itemized list of the various extra equipment and special accessories installed upon the insured automobile, and the original cost thereof, together with the original cost of the automobile to the assured at the time of its delivery, which itemized list shows the original cost of the automobile, including its equipment, to have been $11,810.50. In substance, the letter states that, in the opinion of the adjuster, the loss was "purely accidental and absolutely honest in so far as your assured is concerned;" that the amount and extent of the loss exceeded the amount of the insurance; that the value of the automobile and its equipment at the time of the fire was in excess of $7500; and that the insured automobile was completely destroyed, there "not being enough salvage to pay for cartage."

Plaintiff was allowed to put the aforesaid letters in evidence, over the objections of defendant that they are privileged communications between defendant and its adjuster, and that they are irrelevant and immaterial.

Appellant contends that the letters fall within the category of privileged communications in that they relate to an investigation and report, made by the adjuster at defendant's instance and request, for the purpose of enabling the defendant to protect its rights against threatened or impending litigation. The dates of the letters disclose that they were written almost immediately after the occurrence of the fire which occasioned the loss, and at a time when it cannot well be said that any litigation was impending, or was even threatened by the insured. The instant suit was not commenced by plaintiff until November 16, 1925, one year and ten months after the letters in question were written. The letters in question appear to have been written in the ordinary course of

defendant's business, and, in our opinion, such letters are in the nature of official communications or reports between officials or agents of defendant, relating to a subject-matter under investiga- tion in the ordinary course of defendant's business, and which in- vestigation was not made in view of any existing or prospective litigation. Reports and communications made under such circum- stances are ordinarily held not to be privileged, and as being gen- erally admissible in evidence. [40 Cyc. 2392; Irons v. American Ry. Express Co., 318 Mo. 318, l. c. 336, 337; Virginia-Carolina Chem- ical Co. v. Knight, 106 Va. 674, 680.] In the Knight case, supra, the Virginia Supreme Court of Appeals ruled: "The report in ques- tion was made by an official of the defendant in the course of his ordinary duty immediately after the accident, before any action had been brought or threatened. A report made under those cir- cumstances, although the original or a copy of it was afterward communicated to the defendant's attorneys when suit was threat- ened or brought, is not a privileged communication within the reason of the rule under the authorities. See, 4 Wigmore on Ev., sections 2307, 2308, 2318, and cases referred to in the notes."

We regard the letter of January 11, 1924, written by defendant to the Insurance Adjustment Company, as being relevant and ma- terial evidence, for the reason that such letter tends to show the employment (by defendant) of Shirley, as its authorized adjuster and agent, to ascertain and adjust the amount and extent of the loss. Of course, any special limitation upon the adjuster's author- ity (if any there was contained in said letter) was not binding upon plaintiff, who is not shown to have had knowledge or information of such limitation. We regard the letter of January 18, 1924, constituting the report of the adjuster to his principal, the defend- ant insurance company, as relevant and material evidence upon the issue of defendant's vexatious refusal to pay the loss, for the reason that said letter tends to show knowledge, upon defendant's part, of the merit of plaintiff's claim, of the value of the automobile and its equipment at the time of the fire, and of the amount and extent of the loss under defendant's policy of insurance. More- over, such letter tends to corroborate the testimony of plaintiff that defendant's adjuster had ascertained and agreed with plaintiff that the amount and extent of the loss exceeded the sum of $7500. Since the letter containing the report of defendant's adjuster constituted relevant and material evidence upon the issue of vexatious refusal to pay the loss, and if defendant believed that such evidence should have been limited in its application to that issue, it was the duty of defendant to have requested the court, by instruction or other- wise, to limit the application of such evidence, which request was not made by defendant on the trial. [Thompson v. City of Lamar,

322 Mo. 514, 547; Cazzell v. Schofield, 319 Mo. 1169, 1192; Stanard Milling Co. v. Transit Co., 122 Mo. 258, 273.] If some portions of the letter were immaterial, then defendant is in no position to complain in this court, since defendant failed to request the trial court to exclude the immaterial portions of the letter. [Irons v. Express Co., 318 Mo. l. c. 337.] We conclude that the trial court committed no reversible error in admitting in evidence the letters complained against by appellant.

III. Error is assigned in the action of the trial court in rejecting and excluding certain evidence proffered by defendant. Defendant called as a witness one Astridge, who had been an automobile salesman for the Pierce Arrow Motor Car Company, within the city of St. Louis, since the year 1911, and offered to prove by said witness that the actual or reasonable cash value of the insured automobile and equipment on January 5, 1924, the day of the fire, was $2,645, which offer of proof the trial court rejected. The witness then was permitted to give as his opinion, based upon his experience as an automobile salesman in the city of St. Louis, that the insured automobile had depreciated in value from 35 to 40 per cent during the ten month period of the insurance coverage. Upon cross-examination, however, the witness further testified that his opinion respecting the depreciation in value of the insured automobile was based, not upon any consideration of the insured property as an instrumentality of future and continued use by the owner, but upon the *age* of the automobile, and upon the theory that it was a *used* or "second-hand" car, and that his opinion was also based upon an arbitrary and fixed schedule of depreciation as given in a certain "Blue Book," which the witness described as a "nationally used car book." Upon plaintiff's motion, the testimony of the witness was stricken out and excluded by the trial court, upon the ground that such testimony did not furnish a correct and proper basis of valuation, or of depreciation. Upon the same ground, and for the same reason, the trial court rejected and excluded the testimony of one Boyle, an employee of the Pierce-Arrow Motor Car Company at Buffalo, New York, taken by deposition and proffered by defendant, wherein said Boyle undertook to give his opinion that the fair and reasonable market value, in Kansas City, of an automobile, similar to the one insured under defendant's policy of insurance, on January 5, 1924, the day of the fire, was $5,300; and that the retail sale price in Kansas City of a new and unused Pierce-Arrow automobile, similar in all respects to the automobile insured under defendant's policy, on February 7, 1924, was $7,736. The defendant also proffered in evidence, and the court rejected, a letter, dated February 7, 1924, ad-

dressed to plaintiff, and purporting to have been written by the Pierce-Arrow Motor Car Company, wherein said company offered to deliver to plaintiff "a new Pierce-Arrow 4-passenger automobile touring car, with all the equipment and special construction which was incorporated in your Pierce-Arrow car which you lost through fire, for $7,736, f. o. b. Kansas City, Missouri.''

We perceive no error in the rejection and exclusion of the aforesaid evidence proffered by defendant. The defendant, on March 3, 1923, had issued its policy of insurance in the amount of $7500 upon plaintiff's automobile and the special equipment thereon, at which time the automobile had been in use nearly two years, and had been driven approximately 14,500 miles, and defendant had collected from plaintiff a premium or consideration based upon said amount ($7500) of insurance. Under the so-called "valued policy statute'' of this State (Section 6239, R. S. 1919), which provides "that in all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property covering both real and personal property,'' the defendant insurance company is not permitted to assert or claim that the actual value of the insured automobile and equipment on March 3, 1923, the date on which the policy of insurance was issued, was less than $7500, the full amount of insurance, notwithstanding the fact that the automobile was then a *used* or "second-hand'' car, and had then been driven 14,500 miles. [State ex rel. Burton v. Allen, 312 Mo. 111, 121; State ex rel. Ins. Co. v. Cox, 307 Mo. 194, 201; Strawbridge v. Fire Ins. Co., 193 Mo. App. 687, 690.] Under the rulings in the cited cases, where there is a total loss or destruction, by fire, of personal property covered by a policy of fire insurance, and where the insured and the insurer fail to agree upon the amount of the loss, the proper basis and method of arriving at the value of the property, at the time of its destruction, is by deducting from the agreed value of the property on the day the policy of insurance was issued, as conclusively fixed by the policy, the amount of depreciation, if any, in the insured property between the date of issuance of the policy and the date of the fire. The effect of the evidence proffered by defendant, and excluded by the trial court, was to attack or deny the value of the plaintiff's automobile, as conclusively fixed by the policy of insurance, at the time of the issuance of said policy, in contravention of the provisions of the valued policy statute, supra. In other words, the defendant, in proffering the rejected evidence, sought to establish the value of the automobile at the time of its destruction, without consideration of the value of the automobile at the date

of the policy, and as conclusively fixed therein. The opinion testimony of defendant's witnesses respecting the value of the automobile at the time of its destruction obviously was grounded upon the *age* of the automobile, and upon the further premise or hypothesis that the automobile was a *used* or second-hand car when it was destroyed. Thus, it is apparent that defendant's witnesses, in attempting to testify respecting the value of the automobile at the time of its destruction, failed to take into account and consideration the essential fact that, on the date of the issuance of the policy, at which time the value of the automobile was conclusively fixed at $7500, the automobile had then been in use almost two years, and had been driven 14,500 miles. In our opinion, the trial court was right in excluding the evidence proffered by defendant. [Strawbridge v. Fire Ins. Co., 193 Mo. App. 1. c. 692, 693; Elliott v. Fire Ins. Co. (Mo. App.), 267 S. W. 1. c. 444.]

In the Strawbridge case, supra, TRIMBLE, J., speaking for the Kansas City Court of Appeals, clearly stated the reason for the exclusion of such character of evidence, in the following language: "Many of the questions asked by defendant, which the court excluded, were questions which, in reality, attacked the value of the car at the date of the policy. To have allowed them to be answered would have violated Section 7030 which says the value at that date shall not be questioned. The other questions excluded did not attempt to show the actual depreciation in the machine itself from inherent deterioration through lapse of time, use, injury, or damage thereto, but were based upon the theory of depreciation merely because it was at the time of the fire, a *used* car. Of course, at the time of the fire, the automobile could not have been sold for as much on the market as a new car of the same make and model, for, compared with the latter, the automobile in question would then be what is commonly called a 'second-hand' car. But, as between parties hereto, the value of the car, *in respect of insurance*, means its actual value *as an instrumentality for continued use*. If, through no depreciation inherent in the car itself by reason of the lapse of time, use, injury or damage, the car, as an instrumentality for continued use by the plaintiff, is worth as much or more than the amount claimed, the defendant cannot complain. He cannot add to that actual inherent depreciation the decrease in the price it would bring simply because it is not a new, but is now a used or second-hand car. One might buy a set of furniture, and, after using it in the house for one day without a particle of injury or damage thereto in any way, would be unable to sell it for anything like the price it would command if it had never left the store, and yet the furniture, as subject of insurance between the owner and the insurance company, would be as valuable as ever. Because the

insurance company insures it as *used* property *intended for further use by the insured.* We are, therefore, of the opinion that the court did not err in the exclusion of the evidence.''

To like effect is the reasoning of the St. Louis Court of Appeals in the Elliott case, supra, wherein it is said: ''The value of the car as fixed by the policy was utterly ignored. An attempt was made to determine the amount of the loss by taking the actual value of the car just before the fire as a basis for such determination. *But even this value was not arrived at in a proper way.* In arriving at this value the average price of second-hand cars at St. Louis, as shown by a book published in Chicago, was taken as a basis of valuation, and the condition of plaintiff's car, the number of miles it had traveled, the use it had been put to, and the value of such a car in the vicinity of Warrenton (the place of its use and destruction) received no consideration.''

IV. Appellant assigns error in the refusal of its requested instructions G and H. Instruction G purposed to tell the jury that, ''in determining the actual cash value of the plaintiff's automobile at the time and place it was destroyed, you may consider the *age* of said automobile, the *extent* and character *of use* thereof, the depreciation, if any, in its value after the date of the policy sued on, and the condition of said automobile at the time it was destroyed.'' Instruction H purposed to tell the jury that ''you cannot, in any event, award plaintiff as damages, for the loss of his automobile, a greater sum than you believe and find from the evidence was the actual cash value of said automobile at the time and place it was destroyed.''

The refused instructions obviously ignored the agreed value of the automobile on the date of issuance of the policy of insurance, as conclusively fixed by the policy, and would have left to the jury the determination of the actual cash value of the automobile, at the time of its destruction, without advising them that, in arriving at the actual cash value of the automobile at the time of its destruction, they must take into account and consideration the agreed value of the automobile at the date of issuance of the policy. While the refused instructions purposed to tell the jury that, in determining the actual cash value of the automobile at the time and place of its destruction, they might take into consideration the *age* of the automobile, and the *extent* of its use, they failed to tell the jury that they must also take into consideration, in such connection, the fact that the automobile was almost two years old, and had been driven 14,500 miles, when the policy of insurance was issued, at which time the agreed value of the automobile was conclusively fixed by the policy at $7500. The requested instructions do not

set forth the proper and correct basis and method of arriving at the value of the automobile at the time of its destruction by fire, as such method is prescribed by the adjudicated cases under the valued policy statute of our state, and the trial court acted rightly in refusing the same.

V. Appellant complains of the submission of the issue of defendant's vexatious refusal to pay the loss under the policy of insurance, and assigns error in the refusal of its requested instructions designed to withdraw such issue from the consideration of the jury. Appellant urges that, under the previous ruling of this court, "defendant is to be allowed to entertain an honest difference of opinion as to its liability, or as to the extent of such liability, under the contract of insurance, and to litigate that difference." [Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 422.] It is insisted by appellant that its failure to pay the loss promptly, and without litigation, is attributable wholly to plaintiff's unreasonable demand for the payment of the face amount of the policy of insurance, and to a reasonable doubt, arising out of all the facts and circumstances connected with plaintiff's demand, as to defendant's liability, and as to the extent thereof, under the terms and provisions of the policy of insurance.

This court has uniformly construed the meaning of the statute (Sec. 6337, R. S. 1919) to be that, "when an insurance company has, without reasonable or probable cause or excuse, obstructed a beneficiary by refusing to pay his loss under its policy, he may be allowed in his suit thereon the penalties prescribed by the statute." [State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1095; Block v. Fidelity & Guaranty Co., 316 Mo. 278, 305; State ex rel. Insurance Co. v. Trimble, 18 S. W. (2d) 21, 22.] It has been said by the Kansas City Court of Appeals, and quoted approvingly by this court in the Non-Royalty Shoe Co. case, supra, that "while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty. [Patterson v. Ins. Co., 174 Mo. App. 37, 44.]" However, if the reasonable inference may be drawn from a general survey of all the facts and circumstances in the case that the defendant's refusal to pay the loss under the policy of insurance was without reasonable or probable cause or excuse, then the issue of defendant's vexatious refusal to pay the loss is properly submissible to a jury. [Fay v.

Insurance Co., 268 Mo. 373, 390; Young v. Insurance Co., 269 Mo. 1, 21; Keller v. Insurance Co., 198 Mo. 440, 460.]

In the instant case, the mere fact that the fire which destroyed plaintiff's automobile occurred in the unusual and extraordinary manner as claimed by plaintiff, and by reason of his own carelessness in smoking a lighted cigarette at the time he was filling the tank of the automobile with gasoline, and because, in an effort to rid himself of the lighted cigarette, he carelessly permitted the same to fall into the stream of gasoline he was then pouring into the tank of the automobile, does not afford defendant a reasonable or probable ground or excuse for denying its liability for payment of the loss under the policy of insurance. The policy, by reason of any of its stipulations and exceptions, does not relieve the defendant from liability under such circumstances, but expressly provides that the insurer will indemnify the assured against direct loss or damage, occurring by fire, *"from any cause whatsoever."* It is true that such language of the policy will not permit the insured to recover for a loss occasioned by his willful and intentional act to destroy the automobile, in order to collect the amount of insurance thereon. But so far as the record herein discloses, the defendant insurance company at no time, before or after the commencement of suit upon the policy of insurance, has made the claim that plaintiff willfully and intentionally destroyed the automobile, or that his claim for indemnity under the policy of insurance is fraudulent. Certainly, defendant did not plead any such defense in its answer, or make such contention upon the trial. Nor has defendant at any time, so far as the record discloses, made the claim that there was fraud or fraudulent collusion upon the part of plaintiff and defendant's adjuster, Shirley, in ascertaining and adjusting the amount and extent of the loss, which adjustment is alleged in the petition to have been made by defendant's adjuster with plaintiff shortly after the fire. Defendant made no claim of fraud in the adjustment of the loss on the trial, nor does the answer set up any such affirmative defense. In fact, the defendant made no attempt whatsoever at the trial to disprove any of the admissions or statements attributed to defendant's adjuster by the plaintiff, or to disprove any of the statements made by the adjuster in his written report to defendant: nor did defendant proffer the testimony of its adjuster on the trial in denial of the fact that an adjustment and ascertainment of the amount and extent of the loss under the policy of insurance had been made by and between plaintiff and defendant's adjuster, as pleaded in the petition and as testified to by plaintiff.

We are of the opinion that the reasonable inference may be drawn from all the facts and circumstances in the case that the defendant's refusal to pay the loss was without reasonable or probable cause

or excuse, and hence the trial court rightly submitted to the jury for determination the issue of defendant's vexatious refusal to pay the loss.

In connection with the submission of such issue, however, the appellant furthermore urges that the trial court erred in refusing defendant's requested instruction to the effect that, if the jury should "believe and find from the evidence that the defendant entertained an honest difference of opinion with plaintiff as to its liability, or as to the extent of the loss under the policy, and that defendant had reasonable grounds for its opinion and defended against the plaintiff's claim and suit in good faith upon such reasonable grounds," then the jury must not allow plaintiff any amount under the issue of vexatious refusal to pay the loss. The refused instruction may have been well enough as a correct declaration of a rule of law, provided there had been any substantial evidence in the case which warranted its submission; but there was no substantial evidence in the case to support, or to justify, the giving of such instruction to the jury. Without any substantial evidence to support it, the refused instruction amounted to a mere abstract declaration of law. Hence, the trial court committed no reversible error in refusing the same.

We find no reversible error upon the record before us, and the judgment must be affirmed. It is so ordered. *Ferguson* and *Sturgis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Seddon, C., is adopted as the opinion of the court. All of the judges concur.