Louis DEIG, doing business as Deig's Automotive Service, Plaintiff-Respondent,

v.

GENERAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.

No. 7568.

Springfield Court of Appeals.

Missouri.

April 9, 1957.

Harry H. Kay, Eldon, for appellant.

J. W. Grossenheider, Lebanon, C. W. Terry, Camdenton, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a verdict and judgment of the Circuit Court of Camden County, Missouri, for plaintiff against defendant, General Insurance Company of America, in the sum of $277.64 for labor and materials furnished to repair an automobile owned by S. Bennett England.

Plaintiff's petition alleged that defendant is indebted to him in the sum of $277.65 for work, labor, and materials furnished to and upon one certain automobile owned by S. Bennett England, which work, labor, and materials furnished was ordered by defendant for which it promised and agreed to pay.

The answer was a general denial.

In our opinion we will refer to appellant as defendant and respondent as plaintiff, the position they occupied in the lower court.

Defendant first assigns as error the court's refusal to sustain a motion for directed verdict at the close of all of the evidence and in overruling defendant's after-trial alternative motion for judgment because: There was no substantial evidence that McCormick Wilson, as agent of defendant, was vested with authority to order plaintiff to repair the automobile of England and obligate defendant to pay for such repair.

With this contention we do not agree. Admittedly, defendant carried a collision automobile insurance policy on England's car at the time of the collision June 10, 1952; that defendant employed McCormick Wilson of Jefferson City to adjust the claim for damages; that under the terms of the insurance policy defendant had the option to pay the damages on the England car or to repair it.

Wilson testified for defendant that defendant referred the claim of loss on the England car to him for adjustment; that he made two trips to Camdenton to adjust the loss. He gave this testimony:

"Q. Now, Mr. Wilson, what did you come down here for and what did you go over to see the assured about? You wanted to determine the damage to the car, didn't you? A. Yes.

"Q. And to make arrangements for the payment of the amount of damages in order to have the car repaired, didn't you? A. Yes, sir.

"Q. Doesn't your company have authority under your insurance contract, the one that it had with the policyholder, to either pay him the amount of the damage to the car or have the repairs made itself? Isn't that a standard policy form and don't General Insurance Company of America have such a policy? A. Well, the determination that I made was that the car should not be towed to the salvage yards, but that it should be repaired, which was what he was doing, he was having it repaired."

Wilson testified that he knew the car was to be repaired and he discussed that matter with the policyholder.

It is admitted that Wilson did work as an Adjuster for defendant-company. He gave this answer: "I represent them from time to time, yes, sir.

"Q. Now, back in June of 1952 you were adjusting losses for them? A. Yes."

In 45 C.J.S. Insurance § 1102, p. 1338, the law is stated:

"An insurance adjuster is ordinarily a special agent for the person or company for whom he acts, and his authority is prima facie coextensive with the business intrusted to him. The acts of an adjuster within the apparent scope of his authority are binding on the company in the absence of notice to insured of limitations on his powers. Thus having investigated the circumstances of a loss, an adjuster, on whose powers insured knows of no limitation, . may go further and settle the loss, and bind the insurance company which he represents by his action. He may determine the amount of the loss, and how, when, and where it shall be paid; and he may exercise insurer's option to pay the loss or to reconstruct or repair the building injured." Booker v. Motor Ins. Corporation, Mo.App., 228 S.W.2d 694, 696.

In Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616, 622, the adjuster agreed with the insured to pay a loss of $342.21 and that the company would pay. This law was stated:

" 'Objection was made to the introduction of evidence as to the agreements or contracts of the adjusting agent of the defendants, upon the ground that there was no affirmative evidence that the adjuster had authority to bind the defendants. We have decided in McCollum v. Hartford Insurance Co., 67 Mo.App. 76; McCollum v. Liverpool, 67 Mo.App. 66, that *the business of an adjusting agent*

*is to ascertain the loss and agree with the assured on a settlement.* The same principle is declared and enforced in the more recent case of Bowen v. Hanover Fire Ins. Co., 69 Mo.App. 272. * * *' "

In Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Part 1, Perm. Ed., § 3751, p. 367, the law is stated:

"It is the business of an adjuster to investigate the loss, ascertain the facts with reference to it, and agree on a settlement with the assured; and the adjuster of an automobile insurance company, regularly in its employ, is the representative of the company; as to the settlement of losses, his acts, within the actual or apparent scope of his authority, being the acts of the company, are binding upon it.

"Where an adjuster, after making an investigation satisfactory to himself, authorizes the making of repairs on the damaged automobile, pursuant the provisions of a collision policy, the insurer is bound thereby, and must pay the cost of such repairs in the absence of any imposition practiced on the adjuster." The author cites under this declaration of law, Curtis v. Indemnity Co. of America, supra.

■ In the instant case, Wilson, the adjuster, admittedly adjusted the loss on the England car by agreeing with England to have it repaired. Having investigated the circumstances of the loss, Wilson, whose powers insured was not informed of any limitation, was vested with power to settle the loss and bind the insurance company. Such acts were within the express terms of the insurance policy. Wilson's power as an adjuster for defendant gave him the power to determine the loss, and how, when and where it should be paid. We find no merit in this first assigned error.

It is next contended that Wilson did not order plaintiff to repair the automobile in

question or order the parts for such repairs; that the evidence is insufficient to show such an agreement.

With this contention we agree. Louis Deig, plaintiff, testified that he was engaged in the garage business in Camdenton in June, 1952; that S. Bennett England called him to tow in England's Packard automobile to plaintiff's garage. The automobile had been damaged by collision. Plaintiff said that England "authorized him to fix or bend up the front axle places and radiator and hood and body damage and tires."; that England had run into a tree. Plaintiff said:

"* * * he authorized us to fix the front axle and get the car so it would steer and drive till his insurance man would come down, and we went ahead and straightened the axle and the steering of the car and pulled the fenders up off the wheels and he drove the car out of our place and our total bill on the thing was approximately, I think, the best of my knowledge, $28.00."

He testified that within a few days after he had made the temporary repairs on England's car, Wilson and England came to his garage. He gave this testimony:

"Q. Confine it to your conversation with Wilson? A. Well, after we got this done, why Wilson—when Wilson come down why he come in and England and him come in my place of business together, and he wanted to know what it would cost to fix the rest of the damage, and so I told him I didn't have a body man, and we called Mr. Beard, I called Mr. Beard over from the Ford garage, so Mr. Beard and him went on over to the Ford garage, and they made an estimate and left the car there and Mr. Beard started right to work on the car, and a day or so later, after he had worked on the car, his boss, John McCrory at the garage then, Mr. McCrory he come over and he said 'We are in a hurry for these Packard parts.—' "

Plaintiff testified that McCrory could not get the parts or they wouldn't charge the parts to him and that he ordered the same which were charged to him. Plaintiff ordered the parts from the Packard people in Springfield and turned them over to Ford for the purpose of repairing England's car. Plaintiff gave this testimony:

"A. * * * when they got the car repaired why Mr. Beard and Mr. Wilson and England come into my place and Mr. Wilson said 'We are going to settle up now', so all the money was theirs and Packard's excepting the little bit that I had, which I told you about a while ago, so when they went to write the releases up they wrote them all up in my place and Wilson says 'Well, these Packard parts are charged in your name, I will just make the check payable to you and I want you to make the check payable to McCrory for their work' and he had me set down and make out two checks, one for Packard and one for McCrory, so I made out a check to Packard and we put them in the envelope while he was there so he could sure see they were paid, and the girl taken them on her desk so she could mail them the next morning, and he taken and signed Mr. England up on all the releases and everything and he said 'Now, your check will have to come out of St. Louis and they will come directly to you', and they all—everybody left, * * *."

Plaintiff testified he did not receive a check from defendant; that he wrote Wilson in Jefferson City about the matter and received a letter from him, dated October 25th, which was offered in evidence and reads:

"Gentlemen: We are advised by Mr. E. H. Miller that you have not received payment for your work performed on the Packard belonging to Mr. Bennett England." Paragraph. "This matter was referred by our office to the St. Louis office on September 4th, 1952."

Paragraph: "May we suggest that you direct a further inquiry to Mr. Malley, in care of General Insurance Company of America, 800 Buder Building, St. Louis 1, Missouri. We feel sure that they will make prompt settlement of your bill."

Plaintiff testified that Wilson agreed "to pay us" the total amount of the bill less $50 deductible and he stated "since I paid Ford and since I paid Packard for the parts all the money was to come to me."

He was asked on cross-examination about seeing England sign a settlement on his claim and stated the settlement was based on the Ford and Packard bills which were there at the time. He stated "Mr. England signed some papers and he said 'Now, everything is fixed up and the check will come directly to you'". Plaintiff testified "Well, that was after the car was completed. They first come down, and he come down first and he went over to Ford's and agreed on the price of it, fixing the body work, and then he come back down, when they got the job done they called him."

McCormick Wilson testified for defendant that the obligation under the collision policy runs from the company to the insured; that he did undertake to adjust the damages to the England car; that the loss was reported to his office by the defendant and he made two trips to make the adjustment, the first on June 27, 1952, at which time the automobile had not been completely repaired but was in the process of being repaired. He denied that he ordered the repairs done and denied that he told plaintiff to order the parts or promised to pay plaintiff for the repairs which had already been done. He admitted he represented defendant from time to time and was still adjusting losses for them. He testified on cross-examination that he wanted to determine the damage to the car and make arrangements for the payment of the amount thereof; that he wanted the car repaired. He admitted he talked with plaintiff at his garage when England was present. He testi-

fied he recalled a discussion with England, Deig and Beard after the repairs had been completed on the car; that he recalled that plaintiff had the bills from Packard for parts and from the Ford Motor Company; that there was a group of charges, some for labor, some for parts, and some for work that Deig had done. He stated there were some additional parts and some additional labor that had been ordered and was to be done.

He testified he did not remember having Deig write checks to Packard people and to Ford but that it might have happened; that he did not remember England signing a release. He denied stating to plaintiff that he would secure a draft from defendant-company to plaintiff for the full amount of the loss.

Mr. Beard testified that he was present when Wilson authorized plaintiff to pay him for the body work. He stated the best he could remember, Wilson said "Well, that's all right, you go ahead and pay this fellow and you pay for the parts and I will straighten it all up with you". That at the time he said this work had been done.

■ The issue presented by the pleadings was that defendant was indebted to plaintiff for $277.65 for work, labor and materials used in repairing England's car, which was ordered by the defendant and for which defendant promised and agreed to pay. The law is well settled in this state that the office of the pleadings is to determine and isolate the issues to those controverted so as to advise the trial court and parties of the issues to be tried. Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230; Herbert v. Herbert, Mo.App., 272 S.W.2d 705, 709; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 28.

■ The issue here presented is, was there substantial evidence to submit to the jury the question of whether Wilson, as agent of defendant, ordered plaintiff to repair the automobile and order the parts for such repair? In considering the sufficiency

of the evidence to make a case, we do not weigh the evidence. It is only where there is a complete absence of probative facts to support the verdict that the appellate courts are authorized to interfere. Siegel v. Ellis, Mo.Sup., 288 S.W.2d 932, 934(1 & 2). Consequently, we must take and view the evidence from the viewpoint most favorable to plaintiff and disregard defendant's evidence except to the extent that it aids plaintiff's case. Siegel v. Ellis, supra, 934; Machens v. Machens, Mo.Sup., 263 S.W.2d 724, 734(16).

A careful analysis of the evidence shows that plaintiff at no time testified that Wilson ordered him to perform any services on the England automobile. Plaintiff said that Wilson and England came to his place of business and asked for an estimate on the cost to repair the car; that they called in Mr. Beard from Ford Garage to estimate the cost of body repairs but, nowhere, does plaintiff say that Wilson was ordering the work done or that he would pay plaintiff to do the work. Plaintiff testified that McCrory from Ford's Garage ordered him to get the parts. We think the evidence clearly shows that Wilson had the right, as agent of defendant, to repair the car in adjusting the claim between defendant and England. Under the policy the obligation was from the defendant to England. There was nothing in this testimony to establish the agreement pleaded in plaintiff's petition.

■■ There is evidence that after the repair work had been completed Wilson had plaintiff pay the bill for body repairs to Ford people and for the parts that were used in repairing the car and that he told plaintiff that defendant would mail him a check for such amount. But that is not the issue raised by the pleadings. This court feels that defendant is justly indebted to plaintiff, under the facts, but, we also find that plaintiff has failed to prove his case as

alleged in his petition. He failed to offer substantial evidence to prove the allegations of the petition that the labor and services sued for were ordered by defendant and for which defendant promised to pay. For that reason this judgment must be reversed.

Having found that plaintiff failed to make a case under the first allegation of error, it is unnecessary to decide the other issues involved.

The cause is reversed and new trial ordered so that plaintiff may amend his petition if he so desires.

STONE, J., concurs in result.

RUARK, J., concurs.

STONE, Judge (concurring in result).

Agreeing that, viewed in the light most favorable to plaintiff, the record affords no evidentiary support for plaintiff's *pleaded* theory that defendant was indebted for work and labor done and material furnished which "was ordered by the defendants," or for plaintiff's *submission* in instruction 1 on the hypothesis that Wilson "made an agreement with plaintiff for the plaintiff to direct the repairs of the England automobile," I concur in the *conclusion* that the cause must be reversed and remanded for new trial. But, apprehending that it is neither my function nor province in this jury-tried case to indicate my personal views as to the merits, I concur in result only, content to leave determination of contested factual issues to the triers of the facts under proper instructions, if, upon an amended petition, plaintiff makes a submissible case on his then pleaded theory.